**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 96-10302

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS RIVAS;
DOUGLAS IBARRA,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Texas, Dallas

October 2, 1998

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This case is before us on appeal from defendants' convictions in the district court of one count each of conspiracy to possess with the intent to distribute and possession with intent to distribute, in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. For the following reasons we REVERSE in part and AFFIRM in part.

BACKGROUND

On September 4, 1995, Carlos Rivas applied to enter the United States at the Los Indios Port of Entry at Brownsville, Texas. Rivas was the driver and sole occupant of a 1977 Kenworth truck towing an ostensibly empty auto-transport trailer. He told Customs officials that he was going to San Antonio to purchase used automobiles for resale in El Salvador. During the processing of Rivas for entry into the country, Customs inspectors drilled into the frame of the trailer and discovered a white powder which field-tested positive for cocaine.

Surveillance was established on Rivas and his vehicle, and over the ensuing several days, Rivas traveled to Dallas. Rivas met with Douglas Ibarra at the Deluxe Inn in Irving, Texas, on September 8, 1995. Rivas and Ibarra each removed luggage from their vehicles and placed the luggage into room 218 of the motel. They then drove their vehicles to a small commercial building in a fenced-off lot in Dallas. Rivas left his tractor-trailer parked there and departed in a rental car. Ibarra departed in his car. Customs agents arrested both men, and they obtained a search warrant to search the tractor-trailer. The agents used an acetylene torch to remove 40 one-kilogram bricks of cocaine from the frame of the trailer.

Rivas and Ibarra were indicted and charged with one count of conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine and with one count of possession with intent to distribute in excess of 5 kilograms of cocaine. Rivas filed a motion to suppress evidence based on Customs officials' warrantless search of his truck at the border. The district court entered an order ruling that the initial search of the truck at the border stop was legal but stating that it needed more information before it could rule on the subsequent search of the truck in Dallas that resulted in the discovery of 40 kilograms of cocaine. The court scheduled a hearing, however, nothing in the record indicates that the hearing ever occurred or that any supplemental pleadings on the issue were ever filed. The record reflects that, immediately prior to selecting a jury, counsel for Rivas stated that she wanted to preserve Rivas' right to appeal the district court's ruling that the border search was legal. The court assured counsel that she had done so.

After a three-day trial, the jury found Rivas and Ibarra guilty as charged. The court sentenced Rivas to 188 months' imprisonment and Ibarra to 170 months' imprisonment. Each timely filed his notice of appeal.

DISCUSSION

I.      Rivas' Motion to Suppress

Rivas argues that the search of his vehicle at the port of entry violated the Fourth Amendment. In ruling on Rivas' motion to suppress, the district court did not conduct a suppression hearing but

stated that "governmental officers at the international border may conduct routine stops and searches without a warrant or probable cause." The court concluded that "[b]ecause [Rivas] was entering the United States, U.S. Customs officials were permitted to search his vehicle, without a warrant, prior to entry." Implicit in the court's ruling was a determination that the Customs officials' drilling holes into Rivas' vehicle amounted to a routine search.

In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and accept the trial court's factual findings unless clearly erroneous. United States v. Carrillo-Morales, 27 F.3d 1054, 1060-61 (5th Cir. 1994) (citations omitted). As we noted above, however, the district court did not hold a hearing on the suppression issue and ent ered no factual findings regarding this issue.

"[W]arrantless searches and seizures are unreasonable per se unless they fall within a few narrowly defined exceptions." United States v. Cardenas, 9 F.3d 1139, 1147 (5th Cir. 1993). The border-search doctrine is one of those exceptions. Id. Under the border-search doctrine, government agents may conduct a "routine search" at the international border or its functional equivalent without probable cause, a warrant, or any suspicion to justify the search. Id. at 1147-48. "Routine searches" are generally classified as those which do not "seriously invade a traveler's privacy." Id. at 1148 n.3. A stop and search that is not "routine" requires a "reasonable suspicion of wrongdoing to pass constitutional muster." Id. (internal quotations and citation omitted). Reasonable suspicion of criminal activity must be based upon "specific facts which, taken t ogether with rational inferences therefrom, reasonably warrant an intrusion." Id. at 1153. Reasonable suspicion is defined as "a particularized and objective basis for suspecting the particular person" of smuggling contraband. United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985) (internal quotation and citation omitted). In determining whether government agents possessed a reasonable suspicion that criminal activity was occurring, we must consider "the totality of the particular circumstances." Cardenas, 9 F.3d at 1148 (internal quotations and citation omitted).

3

This Circuit has never before confronted the issue of whether drilling into the body of a vehicle at a border checkpoint amounts to a routine or a nonroutine search. However, the First Circuit has held that drilling into a closed, metal cylinder was not a routine search because force was used to effect the search. United States v. Robles, 45 F.3d 1, 5 (1st Cir. 1995) ("We have little difficulty concluding that drilling a hole into the cylinder was not a routine search."). We agree with this analysis and conclude that drilling into Rivas' trailer was a nonroutine search.

Accordingly, we must determine if the Customs officials had a reasonable level of suspicion when they conducted their search. In the instant case, Customs officials's suspicions appear to have been aroused by a drug-detecting dog's inspection of Rivas' truck and trailer during Rivas' entry at the Los Indios port of entry. The dog did not alert to the presence of narcotics at any point during this inspection. Instead, a Customs official testified that the dog "cast" a couple of times. When asked to explain in layman's terms what casting was, he provided the following explanation:

> From the points of entry that we have, the canines are assigned with the dog handlers, our canines that are aggressive, alert, which means that when they detect what they feel is the presence of narcotics in either conveyance or baggage or whatever form it may be, the dog alerts to it aggressively scratching at it or trying to bite at it. That's what we term as aggressive alert.
> The phrase of "casting" is in a sense the dog maybe feels not a strong alert, but something that temporarily stops him and deters his attention at that point. And although he doesn't pursue as aggressive alert, he does stop and give it minute attention and continues with his duties by continuing his examination.

We have held that a drug-dog's alert is sufficient to create probable cause for a search. United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995). Our review of the case law, however, reveals that no federal court has ever confronted a situation where a dog's cast is used to justify a search, nor a situation where a "weak alert" on its own triggers a search. The government bears the ultimate burden of proof when it searches without a warrant. United States v. Roch. 5 F.3d 894, 897 (5th Cir. 1993).

We hold that, in this case, the government has not met its burden. The government has not provided sufficient evidence that casting should always be deemed equivalent to an alert as a matter of law. It did not put on any expert testimony on what casting means, or what weight we should give

4

it. The Customs official testified that he sought out the dog handler for his opinion as to why the dog had cast the vehicle, but defense counsel properly objected to his answer on the ground of hearsay. The government did not attempt to cure this lapse in its evidence by putting on the dog handler. In fact, the only evidence the government can rely on is the lay testimony by the Customs official that the difference between an alert and a cast is the difference between scratching and biting at an object, and temporarily stopping, giving part of the object "minute attention" and continuing with the inspection.. If anything, this evidence suggests that casting is too distantly related to an alert to create reasonable suspicion on its own as a matter of law. We thus conclude that in this case, the government has not satisfied its burden of proving it had a reasonable suspicion when the dog's cast at Rivas' vehicle. We thus grant Rivas' motion to suppress, and exclude all evidence obtained from the border search.

Rivas also asks that we exclude all evidence obtained as a result of the border search under the "fruit of the poisonous tree" doctrine. See Wong Sun v. United States, 371 U.S. 471, 484 (1963). Under the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. Brown v. Illinois, 422 U.S. 590, 602-03 (1975). The Government made no such showing. Therefore, the evidence obtained after the border search, including the evidence derived from the subsequent warranted search of his vehicle in Dallas, must also be suppressed.

Because all of the evidence obtained against Rivas is excluded, we REVERSE his convictions.

II. Ibarra's Insufficiency of the Evidence Claim

Ibarra argues on appeal that the evidence was not sufficient to support his convictions. He did not file a motion to suppress the evidence gathered during the border search. As a result, he has waived the objection, and the evidence of the cocaine may be used against him.

Ibarra moved for a judgment of acquittal at the close of the Government's evidence. He did not, however, move for a judgment of acquittal after the verdict. See Fed. R. Crim. P. 29(c). As

5

such, review of Ibarra's sufficiency challenge is limited to a determination whether his conviction results in a manifest miscarriage of justice. See United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994). "'Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" Id. (quoting United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc)).

This is not the case. Ibarra claims that he was in the business of buying and selling used cars and that was why he met with Rivas at the motel and at the empty lot. However, given that the lot in which Rivas and Ibarra met was vacant of used cars and that Ibarra had recently purchased grinders, hammers and punchers -- tools that would have been useful in removing the cocaine from the auto transport -- a reasonable jury could have easily concluded that he was guilty.

III.     Ibarra's Ineffective-Assistance-of-Counsel Claim

Ibarra also asserts that he received ineffective assistance of counsel. "As a general rule, Sixth Amendment claims of ineffective assistance of counsel cannot be litigated on direct appeal, unless they were adequately raised in the district court." United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995). If the claim is raised for the first time on appeal, the court will reach the merits of the claim only "in rare cases where the record [allows the court] to evaluate fairly the merits of the claim." United States v. Higdon, 832 F.2d 312, 314 (5th Cir. 1987). Ibarra's is not one of those rare cases. Any ineffective-assistance claim he may wish to bring may be brought in a 28 U.S.C. § 2255 motion.

CONCLUSION

For the forgoing reasons, we REVERSE the convictions of Carlos Rivas and AFFIRM the convictions of Douglas Ibarra.