# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

––––––––––––

No. 98-20498

––––––––––––

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALBERT DUVALL,

Defendant-Appellant.

––––––––––––––––

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CR-266-1)

––––––––––––––––

August 11, 1999

Before KING, Chief Judge, SMITH and
BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Albert Duvall challenges his cocaine conviction on the ground that critical evidence was obtained in violation of the Fourth Amendment. Finding no reversible error, we affirm.

## I.
### A.

Officers Ybanez and McDaniel of the Houston Police Department were patrolling a high-crime neighborhood known for drug trafficking and violence and were advised to be on heightened alert to drug dealing. At approximately 10:30 p.m., they noticed a Mercedes automobile unlawfully parked.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Duvall was standing next to the vehicle and leaning into its driver's seat window. Suspecting that a drug transaction might be taking place, the officers decided to investigate.

Ybanez asked Duvall to place his hands on the police car to pat him down for weapons. Meanwhile, McDaniel approached the car and questioned its occupant.

Ybanez's pat down revealed a small pocket knife in Duvall's left back pocket and a "hard, kind of square object" in his right back pocket. Ybanez could not identify what this other object was from the plain touch of the pat down; although he believed it might be keys, he also thought it could be a weapon. Out of an abundance of caution, Ybanez removed the object in question and discovered that it was a set of automobile keys attached to an Avis rental car tag. Duvall explained to Ybanez that his car was in the shop, so he was using a rental car. Ybanez then returned the keys to Duvall.

Ybanez asked Duvall for identification.

Ybanez explained that "he would check him out and if everything was okay . . . [Duvall] would be on his way." Duvall handed over an identification card; a computer search revealed two outstanding municipal warrants for Duvall's arrest, stemming from traffic violations.

By then, McDaniel had finished questioning Cook and returned to the patrol car. He got a good look at Duvall for the first time and recognized him from previous narcotics and robbery investigations. The officers began to question Duvall more aggressively. When asked whether he had a vehicle in the vicinity, Duvall became "evasive," prompting Ybanez to ask him to turn over the keys; Duvall did so. This time, however, the Avis rental car tag was missing. Duvall explained that "he was nervous and had eaten the tag."

Now even more suspicious, Ybanez began to look for an automobile that fit the description found on the keys. He found such a carSSa late model Pontiac BonnevilleSSand Duvall's key fit into its lock.

Instead of opening the door to the Bonneville, however, Ybanez asked Duvall for permission to search the car. Duvall consented but would not furnish his consent in writing. Ybanez summoned a drug dog to the scene. When the dog alerted to the presence of drugs on the Bonneville, Ybanez requested and received a search warrant for the car; a search revealed four packages of cocaine, totaling approximately 1.9 kilograms.

### B.

Duvall was convicted of possessing with intent to distribute 500 grams or more of cocaine. Before trial, he moved to suppress evidence because of an unconstitutional search. The denial of the motion is the subject of the appeal.

### II.

Duvall does not challenge the validity of the initial stop or of the pat down. Instead, he focuses on Ybanez's decision to conduct further examination of the "hard, kind of square object" he felt in Duvall's rear pocket.

According to Duvall, Ybanez was not authorized to conduct such further examination, and his decision to do so caused the search to exceed the permissible scope of a constitutional *Terry* frisk.[1] Duvall argues that the discovery of his keys led the officers to his rental vehicle (and the cocaine inside it), and thus this subsequently discovered evidence should have been suppressed as "fruit of the poisonous tree." *See United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998).

---

[1] *See Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *United States v. Ponce*, 8 F.3d 989, 999 (5th Cir. 1993).

The district court agreed with Duvall that Ybanez exceeded the scope of his authority when he removed Duvall's keys from his pocket for further examination, but the court found that facts and circumstances arising after and unrelated to Ybanez's actions independently led police to Duvall's rental car. For this reason, the court concluded that the cocaine was admissible under the "independent source doctrine." *See United States v. Hassan*, 83 F.3d 693, 695 (5th Cir. 1996).

We agree with the district court's result but not its reason. We conclude that the search did not exceed the permissible scope of a *Terry* frisk, so there is no need to consider the independent source doctrine.

In *Terry*, 392 U.S. at 27, the Court held that, under some circumstances, police may "stop and frisk" an individual suspected of carrying weapons in the absence of either a search warrant or probable cause. This exception to the warrant requirement, and deviation from the Fourth Amendment's probable cause requirement, arise from the need to protect officers' lives and safety and from the diminished intrusiveness of stop-and-frisks versus full-blown arrests and searches. *See id.* at 20-27.

An officer conducting a *Terry* frisk must have "reason to believe that he is dealing with an armed and dangerous individual." *Id.* at 27. He may not act merely on a "hunch" but, rather, must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 27.

Duvall does not question that Ybanez had reason to be concerned for his (and his partner's) safety, and a brief frisk was a proper precaution. What Duvall does challenge, and what the district court found troublesome, is Ybanez's execution of the frisk.

The permissible scope of a *Terry* frisk is limited by its purpose: "to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). Thus, "it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby . . . ." *Terry*, 392 U.S. at 26. The question, therefore, is whether it was necessary for Ybanez to remove the "hard, kind of square object" he felt.

Under the "plain feel" doctrine (akin to the "plain view" doctrine), Ybanez would have been able to remove the object if "its incriminating character [was] immediately apparent." *Dickerson*, 508 U.S. at 375-77; *United States v. Ponce*, 8 F.3d 989, 999 (5th Cir. 1993). No one asserts, however, that this was the case. Ybanez thought the item in question might have been a weapon; he did not think it might have been contraband. For this reason, the "immediately apparent" standard of *Dickerson* is inapplicable. *See Dickerson*, 508 U.S. at 375.

Because Ybanez suspected a weapon, a more lenient standard should be used in reviewing his suspicions than the high "immediately apparent" standard applied to suspected contraband. *See Terry*, 392 U.S. at 23-24 (noting that "[c]ertainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties"). We addressed this issue of wider latitude for officers in *United States v. Campbell*, 178 F.3d 345 (5th Cir. 1999).

In *Campbell*, an officer removed a "large bulge" from a suspect's pockets, claiming he thought it "was some type of weapon." We held that because the officer "*had not ruled out the possibility that the large bulge was a weapon . . . his removal of the pocket's contents was not beyond the scope of a permissible Terry frisk.*" *Id.* at 349 (emphasis added). Thus, if an officer has not ruled out the possibility that a particular object might be a weapon, he is permitted to conduct further examination of that object. *Id.*

Applying the *Campbell* rule to the instant case, we easily conclude that Ybanez was justified in removing the questionable object. Like the officer in *Campbell*, Ybanez could not "rule[] out the possibility" that the object was not a weapon. *Id.* Given the totality of

the circumstances,[2] Ybanez's fears were objectively reasonable:  There was good reason to believe that the unknown object might have been another weaponSSalthough objective reasonableness is not required under *Campbell*. Accordingly, there was nothing unconstitutional about Ybanez's frisk of Duvall, and without the existence of a "poisonous tree," there are no fruits ripe for suppression.

AFFIRMED.

---

[2] It was late at night in a high crime neighborhood known for drug violence; Ybanez had been warned to be on alert for drug activity; Duvall was found next to an unlawfully and suspiciously parked car; and a pocket knife had already been discovered on Duvall's person.