IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-51160

Summary Calendar

_____


UNITED STATES OF AMERICA

                                        Plaintiff - Appellee

        v.

ALFREDO TEJADA-ORNELAS

                                        Defendant - Appellant


_____

Appeal from the United States District Court
for the Western District of Texas, Pecos Division
P-99-CR-226-ALL-FB
_____

October 26, 2000

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

        Plaintiff-Appellant Alfredo Tejada-Ornelas was convicted by

a jury on one count of importation of marijuana into the United

States from Mexico in violation of 21 U.S.C. §§ 952(a) and

960(a)(1) and one count of possession of marijuana with intent to

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

distribute in violation of 21 U.S.C. § 841(a)(1). Tejada-Ornelas argues that the evidence was insufficient to support his convictions. Reviewing the sufficiency of the evidence under the manifest miscarriage of justice standard, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 1999, Tejada-Ornelas, a 59-year-old truck driver, drove into the United States at the Presidio Port of Entry in Texas in a cattle truck, as he did regularly. He spoke with Customs Inspector Richard Martinez, who knew Tejada-Ornelas from his almost daily border crossings. Tejada-Ornelas warned the officer to "keep an eye on Rodriguez Trucking Company." Martinez spoke to his fellow officers about the warning, in part concerned that it was an attempt to divert suspicion from Tejada-Ornelas himself.

The following day, Tejada-Ornelas again drove into the Presidio Port of Entry, but this time in an unfamiliar tractor-trailer. Because they had never seen this particular vehicle and because of the previous warning, the customs inspectors decided to conduct a canine inspection of the tractor-trailer. After the dog indicated the presence of narcotics in the rear tires of the tractor portion of the vehicle, the inspectors conducted a more thorough search of the tractor-trailer, including the use of a

2

"buster"[1] to check the density of the tires.  When asked if the vehicle could be searched, Tejada-Ornelas made comments to the effect of "Go ahead.  There is nothing there."  According to the officers, he appeared very calm when they began their inspections, but became increasingly nervous after the dog "alerted"[2] and they began their more thorough search.

Canine Enforcement Officer Lawrence Gardea requested that Tejada-Ornelas disconnect the trailer from the tractor.  Tejada-Ornelas responded that he could not do so because the crank did not work and stated, "There's nothing there, really.  You can inspect the trailer."[3]  After a few more requests, Tejada-Ornelas disconnected the trailer, and the tractor was driven to a local service station.[4]  The rim of each tire was cut off with a blowtorch, and 194.4 pounds of marijuana was discovered in sealed

---

[1]   A buster is used to measure the density of an item, in this case, a tire.  The officers take the density reading of the object and compare it to a chart that indicates its normal density reading.  If the density reading is too high, it suggests that the substance is thicker than it should be, indicating that there is something inside other than air.

[2]   As Gardea explained, an alert "is a readable behavior the dog throws when the possible presence of narcotics is there."

[3]   Tejada-Ornelas actually consented to a search of "la trucka," but pointed to the trailer.  The government argues this was an attempt to divert their attention from the tractor, where the marijuana was eventually discovered, to the trailer.

[4]   According to Gardea, this was the first time Tejada-Ornelas had ever hesitated to do anything that had been asked of him.

containers attached to the rims inside the interior rear tires of the tractor.

Tejada-Ornelas was taken to the Customs offices at the rear of the Port of Entry and advised of his rights in Spanish. At the time of his arrest, he had only $38, consistent with his story that he had begun the trip with $50 and had spent $12 to pay the crossing fare at the Presidio check point. He voluntarily spoke with the Customs officials, informing them that he was driving the tractor-trailer for Victor, whose last name he did not know, but later remembered as Enriquez. Tejada-Ornelas explained he had been hired to take the truck to a warehouse, drop it off, and walk back to Mexico where he would be paid. He also stated that Enriquez, who had exited the truck at the border, had not driven the truck into the United States because he did not have a commercial driver's license.

When questioned about his statements to Martinez, he originally denied having made them, but later admitted that he had. Special Agent Joshua Whatmough, who participated in the questioning, testified that he felt Tejada-Ornelas was evasive, failed to answer some questions, and provided incomplete answers to others. However, he also testified that many of the statements and explanations given were later found to be true. During the question, Tejada-Ornelas also made several statements regarding his financial situation. For example, he stated that he was the sole provider for his family, that he had numerous

4

bills to pay, and that he was afraid his phone was going to be cut off.

Tejada-Ornelas's attorney moved for judgment of acquittal at the end of the government's case based on the government's failure to prove the requisite element of knowledge. That motion was denied. There is, however, no evidence in the record that he renewed the motion at the end of the trial or after the verdict. Tejada-Ornelas was convicted on both counts. Following sentencing and entry of judgment, he timely appealed.

## II. DISCUSSION

Tejada-Ornelas argues on appeal that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Normally, the standard of review for sufficiency challenges is "'whether a reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt.'" United States v. Reveles, 190 F.3d 678, 686 (5th Cir. 1999) (quoting United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998)). Under this standard, the evidence and all reasonable inferences from it are viewed in the light most favorable to the verdict. See id. However, reversal is required "[i]f the evidence tends to give 'equal or nearly equal circumstantial support' to guilt and to innocence" because then "'a reasonable jury must necessarily entertain a reasonable

doubt.'"  Ortega Reyna, 148 F.3d at 543 (quoting United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996)).

Yet, the standard for a sufficiency challenge differs when the defendant fails to renew his motion for a judgment of acquittal at the end of trial.  When that occurs, the standard is whether there was a "manifest miscarriage of justice."  United States v. Rivas, 157 F.3d 364, 368 (5th Cir. 1998).[5]  "'Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'"  Id. at 369 (quoting United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992)).  "In making this determination, the evidence, as with the regular standard of review of insufficiency of evidence claims, must be considered in the light

---

[5]  While we recognize that a prior decision of this court raised the question of whether there is a difference between the "sufficiency of the evidence" standard and the plain error "miscarriage of justice" standard, that opinion expressly noted it "need not reach the issue of whether the standards are the same."  United States v. Pennington, 20 F.3d 593, 597 n.2 (5th Cir. 1994).  However, only the court sitting en banc can reverse precedent, and Fifth Circuit precedent both before and after that opinion has consistently found that the "manifest miscarriage of justice" standard is applicable to a sufficiency of the evidence claim when the defendant has failed to make a motion for acquittal at the end of trial.  See, e.g., United States v. Rivas, 157 F.3d 364, 368-69 (5th Cir. 1998); United States v. Laury, 49 F.3d 145, 151 (5th Cir. 1995); United States v. Resio-Trejo, 45 F.3d 907, 910 n.6 (5th Cir. 1995); United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1995); United States v. McCarty, 36 F.3d 1349, 1358 (5th Cir. 1994); United States v. Thomas, 12 F.3d 1350, 1358 (5th Cir. 1994); United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992).

most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994) (citing United States v. Thomas, 12 F.3d 1350, 1358-59 (5th Cir. 1994)).

Tejada-Ornelas contends that there was not enough evidence to support a finding that he knew of the existence of the marijuana in the tractor-trailer. To support a conviction for importation of marijuana into the United States from Mexico in violation of 21 U.S.C. §§ 952(a) and 960(a)(1), the government must prove "that the defendant knowingly played a role in bringing the marijuana into the country." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). Similarly, "[a] conviction for the offense of possession of marijuana with intent to distribute [in violation of 21 U.S.C. § 841(a)(1)] requires proof that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it." Id. Knowledge, therefore, is an element of both offenses.

Knowledge of the presence of contraband may ordinarily be inferred from the exercise of control over a vehicle containing such contraband. See Ortega Reyna, 148 F.3d at 544; see also Lopez, 74 F.3d at 577-78; United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995); Inocencio, 40 F.3d at 724; United States v. Pennington, 20 F.3d 593, 598 (5th Cir. 1994). However, control over the vehicle is not always sufficient to establish

7

guilty knowledge, particularly when the contraband is well hidden.

> When the drugs are secreted in hidden compartments, however, "this Court has normally required additional 'circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.'" This requirement stems from our recognition that, in hidden compartment cases, "there is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." This assumption is heightened when . . . the vehicle is a "loaner" or has otherwise been in the possession of the suspect for only a short time.

Ortega Reyna, 148 F.3d at 544 (footnotes omitted); see also Lopez, 74 F.3d at 577-78; Resio-Trejo, 45 F.3d at 911; Inocencio, 40 F.3d at 724-25; Pennington, 20 F.3d at 598.

For example, this court has relied upon "(1) nervousness; (2) absence of nervousness . . . ; (3) failure to make eye contact; (4) refusal or reluctance to answer questions; (5) lack of surprise when contraband is discovered; (6) inconsistent statements; (7) implausible explanations; (8) possession of large amounts of cash; and (9) obvious or remarkable alterations to the vehicle" as circumstantial evidence of a defendant's guilty knowledge. Ortega Reyna, 148 F.3d at 544 (footnotes omitted) (collecting cases). See, e.g., Rivas, 157 F.3d at 368-69; United States v. Crooks, 83 F.3d 103, 106-07 (5th Cir. 1996); Lopez, 74 F.3d at 577-78; Resio-Trejo, 45 F.3d at 911-13; Inocencio, 40 F.3d at 725. But see United States v. Reveles, 190 F.3d 678, 686-90 (5th Cir. 1999); Ortega Reyna, 148 F.3d at 544-47.

8

As evidence of Tejada-Ornelas's knowledge of the marijuana, in addition to his control over the vehicle, the government relies on the following behavior: (1) his nervousness once the dog "alerted" to the rear tires; (2) his atypical unwillingness to cooperate with the customs agents as evidenced by his initial failure to disconnect the tractor when requested to do so; (3) his attempt to divert suspicion by suggesting the agents keep an eye on Rodriguez Trucking Company and his reluctance to admit he had made the statement during questioning; (4) his statement that he did not know Victor's, the truck owner's, last name and his subsequent recall of it; (5) his implausible excuse, that Enriquez did not have a commercial driver's license, for Enriquez having exited the truck in Mexico and planning to meet him later in the United States; (6) his evasive responses during questioning; and (7) his comments about the dire financial situation of his family.  From this evidence, the government argues that there is a sufficient basis for a reasonable jury to find his nervousness, failure to cooperate, evasive responses, implausible explanations, and inconsistent statements sufficient to prove his guilty knowledge.

The defendant argues that the evidence is in "equipoise," and therefore, the jury could not have found guilt beyond a reasonable doubt.  Because we must decide this case using the manifest miscarriage of justice standard, not the sufficiency of the evidence standard, we need not reach whether the evidence of

9

guilt and innocence is in fact equal in this case.  But, were we to accept Tejada-Ornelas's argument that the evidence is in equipoise, we note that a record that would support such a finding is necessarily not so devoid of evidence pointing to guilt that a conviction based on it is a manifest miscarriage of justice.

Viewing the evidence in the light most favorable to the government, we neither find the record "'devoid of evidence pointing to guilt'" nor find "'the evidence on a key element of the offense . . . so tenuous that a conviction would be shocking.'"  Rivas, 157 F.3d at 369 (quoting Pierre, 958 F.2d at 1310).

### III. CONCLUSION

For the reasons stated above, the convictions of Tejada-Ornelas are AFFIRMED.