# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2011

No. 11-70002

Lyle W. Cayce
Clerk

JOHN MANUEL QUINTANILLA, JR.,

Petitioner–Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:09-CV-39

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

John Manuel Quintanilla, Jr., was charged in Texas state court with the murder of Victor Billings. The jury found Quintanilla guilty of murder committed in the course of committing or attempting to commit a robbery—a capital offense—and the state court judge sentenced him to death based on the jury's verdict on the issues of punishment. Quintanilla petitioned unsuccessfully for post-conviction relief in state court. He filed a habeas petition in federal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70002

district court, which the district court denied in all respects and dismissed. The district court *sua sponte* declined to issue a certificate of appealability ("COA"). Quintanilla has filed an application for a COA to this court on two grounds: (1) whether his confession was obtained in violation of the Fifth Amendment and therefore improperly admitted at trial; and (2) whether his confession was obtained in violation of the Sixth Amendment and therefore improperly admitted at trial. We deny Quintanilla's application on both grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The details of the murder giving rise to this case and the factual circumstances surrounding Quintanilla's confession are memorialized in opinions by the Texas Court of Criminal Appeals, *Quintanilla v. State*, No. AP-75061, 2007 WL 1839805 (Tex. Crim. App. June 27, 2007) (unpublished) (slip op.), and the federal district court, *Quintanilla v. Thaler*, No. 09-CV-39, 2011 WL 284353 (S.D. Tex. Jan. 25, 2011) (slip op.). We do not repeat them here.

In short, Quintanilla was arrested on January 14, 2003, on a warrant for an aggravated robbery unrelated to the instant offense. At 2:30 p.m. on January 15, 2003, Quintanilla was taken before a magistrate for Texas Code of Criminal Procedure Article 15.17 proceedings and warnings, which included informing Quintanilla that he had the right to request the appointment of counsel and the right not to make a statement and that all statements he made would be used against him. Quintanilla requested appointed counsel at the Article 15.17 hearing.

At approximately 4:00 p.m. on the same day, Quintanilla was interrogated without counsel regarding his charged robbery offense by Victoria County Sheriff's Office Investigator Abel Arriazola and Calhoun County Sheriff's Department Investigator Mike Kovorek. Prior to beginning the videotaped interview, the investigators gave Quintanilla his *Miranda* warnings, including notifying him of his right to counsel and right to remain silent, both of which

2

No. 11-70002

Quintanilla waived. The investigators took a break at approximately 7:55 p.m., and Quintanilla and Kovorek returned at approximately 8:10 p.m. Kovorek then left, and at around 8:35 p.m., Arriazola returned with Victoria Police Department Detectives Alfred Santiago and Tom Copeland. Arriazola told Quintanilla that "Nothing has changed from the time I've talked to you," apparently meaning that his rights were still in effect, and Santiago and Copeland were apparently aware that Quintanilla had been Mirandized at the beginning of his interview. Santiago and Copeland then interrogated Quintanilla, including asking questions about the capital murder with which Quintanilla was not yet charged. About fifteen minutes into the interrogation the detectives reminded Quintanilla of his *Miranda* rights, which Quintanilla again waived. Quintanilla subsequently made inculpatory statements regarding the capital murder.

After a pre-trial hearing, the state trial court judge determined that Quintanilla's statements made during his interrogation about the aggravated robbery offense had been obtained in violation of his Sixth Amendment right to counsel, which Quintanilla invoked when he requested counsel at the Article 15.17 hearing. The trial judge also ruled that Quintanilla had freely waived his Fifth Amendment rights to court-appointed counsel and to be silent at the custodial interrogation, and that the Sixth Amendment violation related to the aggravated robbery charge did not prohibit the admission of statements Quintanilla made regarding other then-uncharged offenses, including the instant capital murder offense.

Quintanilla was convicted by a jury of capital murder and sentenced to death. He timely appealed his conviction and sentence in state court, and sought habeas relief in state court and in federal district court. This application for a COA timely followed.

No. 11-70002

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner can appeal a district court's dismissal of a habeas petition only if the district or appellate court issues a COA.  28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Because the district court *sua sponte* declined to issue a COA, Quintanilla must seek a COA from this court to obtain further review of his claims.  *See* 28 U.S.C. § 2253(c); *see also Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006).

We will issue a COA if Quintanilla can make "a substantial showing of the denial of a constitutional right" by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  At this stage, our inquiry "is a threshold inquiry only, and does not require full consideration of the factual and legal bases of [Quintanilla's] claim." *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005).  Because Quintanilla was sentenced to death, "we must resolve any doubts as to whether a COA should issue in his favor." *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

In determining whether reasonable jurists would debate the district court's assessment of Quintanilla's claims, we keep in mind that the district court's decision must be made pursuant to AEDPA's deferential standards. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *see also Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005).

AEDPA permits a federal district court to grant relief only if the state court decision (1) "'was contrary to' federal law then clearly established" by Supreme Court precedent, *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting 28 U.S.C. § 2254(d)(1)), or (2) "'involved an unreasonable application of' such law," *id.* (quoting 28 U.S.C. § 2254(d)(1)), or (3) "'was based on an

unreasonable determination of the facts' in light of the record before the state court," *id.* (quoting 28 U.S.C. § 2254(d)(2)).

A decision is contrary to federal law if it is "opposite to that reached by [the Supreme] Court on a question of law" or if it resolves a case differently from the way the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision unreasonably applies federal law when it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 407. A state court decision also unreasonably applies federal law if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. "The state court's findings of fact are entitled to a presumption of correctness and the petitioner may overcome that presumption only by clear and convincing evidence." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

### III. ANALYSIS

Quintanilla argues in his application for a COA that the state court unreasonably applied federal law on two grounds: first, that his confession to capital murder was obtained in violation of his Fifth Amendment right to counsel and therefore improperly admitted at trial; and second, that his confession was obtained in violation of his Sixth Amendment right to counsel and therefore improperly admitted at trial. We address each issue in turn.

### A.    Fifth Amendment Right To Counsel

In his petition for a COA, Quintanilla argues that the Article 15.17 hearing before the magistrate—at which he was informed of and exercised his right to court-appointed counsel—invoked his Fifth Amendment rights in addition to his Sixth Amendment rights as found by the state trial court.

No. 11-70002

Because the Fifth Amendment right to counsel is not offense-specific, Quintanilla argues that he was illegally interrogated about the instant offense without counsel notwithstanding his subsequent waiver of his *Miranda* rights during the interrogation itself.

The Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 481 (2001). The *Miranda* Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the "inherently compelling pressures" of custodial interrogation: specifically, that "police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

Quintanilla undeniably was not subject to "custodial interrogation" at the time he appeared before the magistrate at the Article 15.17 hearing. Indeed, he concedes that the magistrate "was not going to interrogate him" and that he was not subject to questioning by law enforcement officers until approximately two hours after his appearance before the magistrate. Rather, Quintanilla argues that his request for counsel at the hearing invoked his Fifth Amendment right to be free from *any* future custodial interrogations without the presence of counsel. The Supreme Court has held, however, that an accused's request for counsel at an initial appearance on a charged offense does not constitute an

6

invocation of the Fifth Amendment right to counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 181–82 (1991).

Quintanilla's argument—that the Article 15.17 hearing is "basically to Mirandize the accused" and is "more than" a preliminary hearing such that his Fifth Amendment rights attached—is without merit and made without a shred of legal support. Indeed, the Supreme Court has specifically held that Texas's Article 15.17 hearing and initial appearance before a magistrate is a preliminary hearing that invokes the offense-specific *Sixth Amendment* right to counsel. *See Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008).[1] Simply put, the Fifth Amendment right to counsel did not attach at the Article 15.17 hearing because Quintanilla was not then subject to custodial interrogation.

It is undisputed that Quintanilla was given his *Miranda* warnings by law enforcement officers before they interrogated him, and that he waived his Fifth Amendment right to counsel at that time. Quintanilla has therefore neither made a substantial showing that his Fifth Amendment right to counsel was denied, nor has he demonstrated that reasonable jurists could disagree with the district court's determination that Quintanilla did not invoke the Fifth Amendment right to counsel during the Article 15.17 hearing.

## B. Sixth Amendment Right To Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The Sixth Amendment right [to counsel] . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the

---

[1] The Supreme Court has also explicitly rejected the argument that an accused can "combine" the Sixth and Fifth Amendment rights to counsel and that the prior invocation of the offense-specific Sixth Amendment right voids all subsequent Fifth Amendment waivers at the time of custodial interrogation on unrelated offenses. *See McNeil*, 501 U.S. at 177.

initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001) (quoting *McNeil*, 501 U.S. at 175). Furthermore, "a defendant's statements regarding offenses for which he had not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *Id.* at 168.[2]

The state court held, and Quintanilla does not seek to challenge, that (1) the Article 15.17 hearing constituted an initial presentment that triggered Quintanilla's Sixth Amendment right to counsel on the unrelated aggravated robbery offense, (2) he exercised his right to counsel for that offense when he requested an attorney during the hearing, and (3) the subsequent interrogation by law enforcement officials regarding the robbery without counsel present violated Quintanilla's Sixth Amendment right to counsel. In his application for a COA, Quintanilla argues that his request for counsel on the robbery charge extended to the then-uncharged offense of capital murder of which he was eventually charged and convicted. Specifically, Quintanilla argues that the charged and uncharged offenses were "so inextricably intertwined" or "extremely closely related" that the invocation of his Sixth Amendment right to counsel on the robbery charge also attached to the instant (then-uncharged) offense. *See United States v. Cooper*, 949 F.2d 737, 743 (5th Cir. 1991).[3]

---

[2] "Even though the Sixth Amendment right to counsel has not attached to uncharged offenses, defendants retain the ability under *Miranda* to refuse any police questioning." *Cobb*, 532 U.S. at 172 n.2.

[3] *Cooper* has been abrogated by *Cobb*. *See Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1306 n.73 (11th Cir. 2007) (explaining that *Cooper*'s language purporting to provide for an "inextricably intertwined"-uncharged-crimes exception to the rule that the Sixth Amendment is offense-specific is unavailing because the Court's decision in *Cobb* articulates a different standard: the Sixth Amendment does not attach to an uncharged crime unless it "has elements identical to those of the charged crime and would require proof of no additional facts").

No. 11-70002

While Quintanilla states that he made this argument before the state trial court,[4] he did not present this argument to the district court below. In his petition for habeas corpus to the district court, Quintanilla's fifth claim for relief argues that he would not have confessed to the capital murder if he had been timely appointed counsel as requested at the Article 15.17 hearing. His Sixth Amendment argument below was framed as one of causation: had his Sixth Amendment right as to the aggravated robbery charge not been violated and Quintanilla been appointed counsel before the interrogation began, his attorney "would have advised him to assert his Fifth Amendment right to silence, rather than give a detailed account of a crime spree or admit to capital murder." This construction of Quintanilla's argument below is further supported by Quintanilla's citation in his habeas petition before the district court to *United States v. Rivas*, 157 F.3d 364 (5th Cir. 1998), and its "fruit of the poisonous tree" discussion in the Fourth Amendment context. *Id.* at 368.

Nowhere in his petition for habeas corpus does Quintanilla cite to *Cooper* or argue the robbery and the instant offense are "inextricably intertwined" or "extremely closely related." Because this argument is not made in his application for habeas corpus, we lack jurisdiction to grant a COA on this argument and the argument is waived. *See, e.g.*, *Balentine v. Thaler*, 626 F.3d 842, 848–49 (5th Cir. 2010); *Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006) (explaining appellate jurisdiction over an application for a COA).

## IV. CONCLUSION

For the foregoing reasons, we deny Quintanilla's application for a COA. DENIED.

---

[4] Thaler disputes that Quintanilla raised this argument before the state trial court. Resolving this factual dispute is unnecessary for purposes of deciding Quintanilla's application for a COA.