# United States Court of Appeals for the Fifth Circuit

—————————

No. 23-40338

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Andre Louis Keller,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-548-1

———————————————————————

Before Elrod, *Chief Judge*, and Dennis and Higginson, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Defendant-Appellant Andre Louis Keller drove up to a permanent immigration checkpoint, where a Customs & Border Protection (CBP) canine alerted to the vehicle. When CBP agents searched the vehicle, they discovered an alien unlawfully present in the United States concealed under luggage. Keller conditionally pleaded guilty, and he now appeals the district court's denial of his motion to suppress evidence of the alien found in the vehicle. For the reasons that follow, we AFFIRM.

No. 23-40338

I

A

In July 2022, Keller drove his vehicle up to the permanent immigration checkpoint at Falfurrias, Texas. CBP Agent Jesse Sandoval and his canine partner, K-9 Jagus, were working in the primary inspection lanes. Jagus is trained to detect controlled substances and concealed humans.

Jagus, held on a leash by Agent Sandoval, was taking a free air sniff of the passing cars from the far side of the right-hand lane when he "alerted" by taking a sharp breath and doing a circle spin. After alerting, Jagus began to trace the odor to its source, pulling Agent Sandoval across the right-hand lane to reach the left-hand lane. When Jagus reached Keller's vehicle, he adopted a "power stance," with his ears straight up. He then took another sharp breath and pulled Agent Sandoval back and forth between the driver's side door and the back hatch of the vehicle. Although several other cars were passing through the primary inspection lanes at that time, Jagus focused only on Keller's vehicle. Jagus did not, however, perform his trained "indication" behavior of sitting.[1]

_____

[1] According to testimony at the suppression hearing, canines like Jagus engage in two types of behavior when they encounter odors that they are trained to detect. An "alert" is an instinctual change in body posture that occurs when the canine first encounters a trained odor. The exact change in body posture is unique to each canine and may not be recognizable to every observer but is recognizable to the canine's handler. An "indication" is a trained behavior—such as sitting, pointing, scratching, or biting—that occurs after the "alert," when the canine detects contraband or people. *See also United States v. Martinez*, 102 F.4th 677, 682 (5th Cir. 2024) (recognizing and explaining the difference between an "alert" and an "indication"). In this opinion, we follow the CBP's technical usage.

In previous cases, this court has used a variety of terms for canine behavior, sometimes using them in a manner that does not hew to the CBP's more technical usage. But in all of these cases, our focus has been on determining what signaling behavior is sufficient to establish probable cause, relying on expert testimony to do so. In *United States*

No. 23-40338

Based on Jagus's alert, Agent Sandoval referred Keller's vehicle for secondary inspection. Before Keller drove to the secondary inspection area, Jagus placed his paws on the rear bumper of the vehicle and sniffed near the back hatch.

Keller pulled into the secondary inspection area and then exited the vehicle. Agent Sandoval and several other agents each separately opened the vehicle's driver door and leaned inside to conduct a cursory check for people, weapons, animals, or other items that could pose a threat to agents' or Jagus's safety. Jagus then sniffed the vehicle again, and he again alerted to the back hatch, taking rapid, shallow breaths. Jagus then indicated by sitting. An agent opened the back hatch, Jagus jumped inside, and agents discovered an alien unlawfully present in the United States hidden under luggage.

B

Keller was charged with one count of transporting an alien unlawfully present in the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(ii).

Keller moved to suppress evidence of the alien found in his vehicle, and the district court held a hearing on the motion. Agent Sandoval and Matthew B. Devaney, research and development coordinator for CBP's

---

*v. Dovali-Avila*, for example, we described an "alert" as the "trained" behavior of "tak[ing] a particular position or stance," 895 F.2d 206, 207 (5th Cir. 1990)—in other words, an "indication" in today's terminology. And in *United States v. Rivas*, we distinguished between an "alert" of aggressive scratching or biting performed by all narcotics dogs, and a "cast" or "weak alert," in which dogs stop their duties to pay attention to an object. 157 F.3d 364, 368 (5th Cir. 1998). In both of these cases, our court's use of the word "alert" parallels our understanding of a trained behavioral indication, while the terms "cast" or "weak alert" correspond to an innate response to *potential* contraband. *See Martinez*, 102 F.4th at 682 (distinguishing between the indication behavior of "fully sit[ting] down" and the alert behavior of "jumping against the door").

No. 23-40338

Canine Academy, testified for the government. Andre Falco Jimenez, owner of a private company that trains police dogs, testified for Keller.

The district court then denied Keller's motion. Keller thereafter conditionally pleaded guilty to the charged offense, reserving his right to appeal the suppression ruling. The district court sentenced him to 20 months' imprisonment, followed by 3 years of supervised release. Keller timely appealed the denial of his motion to suppress.

II

When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party. *United States v. Alvarez*, 40 F.4th 339, 344 (5th Cir. 2022). The determination that probable cause existed is a legal conclusion reviewed *de novo*. *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008). The reliability of a canine's alert is a factual finding reviewed for clear error. *United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003).

"Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quoting *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)).

Unpreserved suppression arguments are reviewed for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Vasquez*, 899 F.3d 363, 372–73 (5th Cir. 2018); *United States v. De Jesus-Batres*, 410 F.3d 154, 158 (5th Cir. 2005).

## III

The Supreme Court has held that stopping a vehicle for brief, routine questioning at a permanent immigration checkpoint is not a Fourth Amendment search and does not require a warrant or probable cause. *United States v. Martinez-Fuerte*, 428 U.S. 543, 566 (1976); *United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990); *United States v. Tello*, 924 F.3d 782, 786 (5th Cir. 2019). "It has further held that agents may also selectively refer motorists to a secondary inspection area without any 'particularized reason.'" *Dovali-Avila*, 895 F.2d at 207 (quoting *Martinez-Fuerte*, 428 U.S. at 563).

"What the Fourth Amendment of our Constitution does not permit, however, is a warrantless search of that same vehicle absent either consent or a determination of probable cause." *Id.* (citing *Martinez-Fuerte*, 428 U.S. at 567). Probable cause exists when, under the totality of the circumstances, a reasonably cautious person would believe that "contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013). In evaluating whether the government has carried its burden of showing probable cause, the Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 244. It requires the government to show "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act." *Id.* (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 231 (1983)).

## IV

Keller makes several arguments as to why we should overturn the district court's suppression ruling. Each is unsuccessful.

A

First, Keller contends that Jagus's actions in the primary inspection lane—(1) sniffing the vehicle and/or (2) placing his paws on the vehicle's bumper—constituted an unlawful Fourth Amendment search. Keller did not raise these arguments in the district court, we review for plain error. *See Vasquez*, 899 F.3d at 372–73; *De Jesus-Batres*, 410 F.3d at 158. We conclude that both arguments fail.

The district court did not plainly err in failing to conclude that Jagus's sniff of Keller's vehicle in the primary inspection lane was a search. The Supreme Court and this court have continually reiterated that a trained canine's sniff does not constitute a Fourth Amendment search. *See United States v. Place*, 462 U.S. 696, 707 (1983); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Dovali-Avila*, 895 F.2d at 207–08. This court has explicitly held that a trained canine's sniff of a vehicle at an immigration checkpoint, whether in the primary inspection lane or the secondary inspection area, does not constitute a Fourth Amendment search. *Dovali-Avila*, 895 F.2d at 207–08. And while our court has not directly addressed whether a canine's sniff constitutes a search when the canine is trained to detect both lawful and unlawful activity, when "this court has not previously considered" the issue presented, the complaining party "fail[s] to show that the district court's error, if any, was plain." *United States v. McGavitt*, 28 F.4th 571, 577 (5th Cir. 2022) (quoting *United States v. Bishop*, 603 F.3d 279, 281 (5th Cir. 2010)).

The district court also did not plainly err in failing to conclude that Jagus's placing of his paws on Keller's vehicle in the primary inspection lane was a search. A common law trespass by a government agent constitutes a Fourth Amendment search only when it is "conjoined with an attempt to find something or obtain information." *United States v. Richmond*, 915 F.3d 352,

357 (5th Cir. 2019) (internal quotation marks omitted) (quoting *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)). A "mere physical touching, such as when an officer leans on the door of a car while questioning its driver," is not a search. *Id.* Numerous circuits agree that, absent police misconduct, the instinctive actions of a trained canine—including placing his paws on a vehicle's exterior—constitute incidental contact, not an unconstitutional Fourth Amendment search. *See, e.g.*, *United States v. Shen*, 749 F. App'x 256, 263 (5th Cir. 2018); *United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016); *United States v. Sharp*, 689 F.3d 616, 619–20 (6th Cir. 2012); *United States v. Pierce*, 622 F.3d 209, 213–15 (3d Cir. 2010); *United States v. Olivera-Mendez*, 484 F.3d 505, 511–12 (8th Cir. 2007); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989).

## B

Next, Keller contends that even if Jagus's actions in the primary lane did not in themselves constitute a search, they did not establish probable cause for Agent Sandoval and his colleagues to search the vehicle in the secondary inspection area. This argument also fails.

Probable cause was not needed for Agent Sandoval to merely refer Keller's vehicle for secondary inspection. CBP agents at a permanent immigration checkpoint may "selectively refer motorists to a secondary inspection area without any 'particularized reason,'" and they have "wide discretion in selecting the motorists to be diverted." *Dovali-Avila*, 895 F.2d at 207 (quoting *Martinez-Fuerte*, 428 U.S. at 563–64). "The constitutional rights of a traveler on our highways are simply not infringed by the mere requirement that he move his car out of the flow of traffic from the primary area of an immigration checkpoint several yards to the secondary area of that same checkpoint." *Id.* But probable cause was required for CBP agents to

search Keller's vehicle once it reached the secondary inspection area. *Id.* (citing *Martinez-Fuerte*, 428 U.S. at 567).

The district court's legal conclusion that probable cause existed to search Keller's vehicle after Jagus alerted and then indicated in the secondary inspection area was not erroneous. When a canine "specially trained to detect concealed contraband or hidden people" performs its trained indication behavior "in the near presence of a particular vehicle, that action is sufficient to give rise to probable cause to search that vehicle." *Id.*[2] Here, Jagus, a canine trained to detect controlled substances and concealed humans, alerted directly beside Keller's vehicle in the primary inspection lane and thereafter alerted again and then performed his trained indication behavior of sitting directly beside Keller's vehicle in the secondary inspection area. Under the totality of the circumstances, this provided probable cause to search the vehicle.

V

For the reasons explained, we AFFIRM the district court's denial of Keller's motion to suppress.

---

[2] As noted above, nuances in the use of canine sniff-related terminology have led us to hold "that a drug-dog's alert is sufficient to create probable cause for a search" but that a "weak alert on its own" does not necessarily "trigger a search." *Rivas*, 157 F.3d at 368 (citing *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995)). Avoiding the problem of changing terminology, we clarify: A trained and certified dog performing its trained behavior is sufficient by itself to create probable cause for a search. A trained and certified dog exhibiting a distinct behavior that is innate or instinctive but not trained *may* create probable cause in combination with other evidence or testimony supporting the government's burden of proof. The disparate terminology "indicate," "alert," "cast," "weak," and "strong" should not be a barrier in applying the Fourth Amendment to canine sniff cases.