# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40299

United States Court of Appeals
Fifth Circuit

**FILED**
February 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JENNIFER LYNN RICHMOND,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GRAVES and COSTA, Circuit Judges and BENNETT, District Judge.*

GREGG COSTA, Circuit Judge:

During a traffic stop, a state trooper pushed his fingers against the vehicle's tire to try and confirm his suspicion that it contained more than just air. We conclude that the brief physical examination of the tire was subject to the Fourth Amendment under the recently revived trespass test for deciding what is a search. The search was a reasonable one, however, because there

---

* District Judge for the Southern District of Texas, sitting by designation.

No. 17-40299

was probable cause to believe the loose tire posed a safety risk.

## I.

## A

Texas State Trooper Manuel Gonzales was patrolling U.S. Highway 77 in south Texas when he saw a blue pickup Jennifer Richmond was driving. He drove alongside the truck and saw that the tires were "shaking," "wobbly," and "unbalanced." He was concerned that the tires were a potential danger to the public. After the truck drove across the fog line between the right lane and the shoulder of the highway, Gonzales initiated a traffic stop. When the vehicle came to a stop, Gonzales saw that one of the truck's brake lights was broken. He ran the license plate and learned the truck was registered two days earlier in nearby Brownsville.

When he approached the vehicle, Gonzales explained the reason for the stop—that Richmond crossed the fog line—and also told her about the brake light. Richmond apologized and, without prompting, stated that she was from Arizona. She avoided eye contact, and Gonzales noticed that her hands were "trembling," her mouth was "dry," and her lips had "a white coating."

In response to questioning, Richmond said that she was from Tucson but was traveling to Brownsville, where she was moving with her husband. Gonzales asked Richmond to exit the truck so that he could show her the broken brake light. Richmond complied.

As Gonzales walked to the rear of the truck, he looked at the passenger-side rear tire and observed that the bolts "had been stripped as [if] they had been taken off numerous times."

This is when the challenged conduct occurred. Gonzales pushed on the tire with his hand. The resulting sound was not what "a normal tire with air" would produce; instead there was a "solid thumping noise" that indicated something besides air was inside. Gonzales, who already was concerned about

2

No. 17-40299

the tires because he had seen them bouncing before the stop, became more suspicious that they might contain drugs.

After tapping the tire, Gonzales resumed asking Richmond about her personal history and itinerary. She could not readily recall her age, date of birth, or husband's name. Richmond asserted that she was traveling to Dallas to visit a friend, but did not know the friend's phone number or address. Stranger still, she said she intended to use Google to learn the friend's address and would return home if that search came up empty.

When Gonzales went back to his car to check Richmond's license and the vehicle's registration, he discovered that, contrary to her story about driving from Arizona, the truck had entered Mexico the day before. It had crossed back into the United States only a few hours before the traffic stop.

Gonzalez then obtained Richmond's consent to search the truck. After finding suspicious items inside the vehicle, Gonzales "let some air out [of the tires] and [ ] smelled some kind of chemical cleaning odor coming out of them." At least one of the tires did not release air. Gonzales checked beneath the truck and saw "fingerprints [ ] on the inside of . . . the rims" and an atypical amount of weight placed on the tires to try to balance them. When he removed the tires, they seemed unusually heavy and solid.

Gonzales decided to take the truck to a local car dealership and have the tires examined. Technicians at the dealership discovered secret compartments that contained methamphetamine.

B

After being charged with trafficking that meth, Richmond tried to suppress its discovery. She challenged the lawfulness of the stop and its length. The district court rejected those arguments, concluding that reasonable suspicion of a traffic violation supported the stop and that Richmond's suspicious statements and demeanor raised sufficient concerns

No. 17-40299

about drug trafficking to support extending the stop for the additional time that resulted in her consenting to the search.

After the motion was denied, Richmond entered a guilty plea that allowed her to appeal the suppression ruling. Before sentencing, Richmond filed an amended motion to suppress that argued for the first time that Gonzales's tap of her tire was a search not supported by probable cause. At the sentencing hearing, the district court considered but rejected Richmond's amended motion because "as the law stands now, tapping tires is not a search." The district court noted that it would permit Richmond to appeal the tire tap issue along with her original Fourth Amendment claims in light of her conditional guilty plea.

## II.

Richmond no longer challenges the initial stop or that there was reasonable suspicion of drug trafficking to extend the stop until the point when Gonzales physically examined the tire. And in not challenging events after Gonzales learned that the tire likely contained more than just air, Richmond apparently acknowledges that discovery justified further investigation into the trafficking up until when she consented to a full search.[1]

So the tap of the tire is the focus of this appeal. Richmond contends that it was a search within the meaning of the Fourth Amendment. That is the case, she says, because touching the tire was a trespass which counts as a search under recent Supreme Court cases. *See Florida v. Jardines*, 569 U.S. 1, 5 (2013); *United States v. Jones*, 565 U.S. 400, 404–07 & n.3 (2012).

The government counters that we have previously held that similar law enforcement conduct is not a search. In *United States v. Muniz-Melchor*, 894

---

[1] The government does not dispute Richmond's premise that an unlawful search of the tire would have tainted the investigation that followed, including her consent.

4

F.2d 1430 (5th Cir. 1990), a border patrol agent used a pocket knife to tap the side of a propane tank mounted in the bed of a pickup. *Id.* at 1432. We acknowledged that the tapping "may have constituted a technical trespass," *id.* at 1435, but explained that *Katz v. United States*, 389 U.S. 347 (1967), had "rejected the notion that what constitutes a trespass under various property laws *necessarily* constitutes a search under the Fourth Amendment." 894 F.2d at 1434. Instead, the then-prevailing *Katz* test—which came not from the majority opinion but from Justice Harlan's concurrence—asked whether the person challenging a search had a reasonable expectation of privacy in the item being examined.[2]  *Id.* (quoting *Katz*, 389 U.S. at 360–61 (Harlan, J., concurring)). The answer was "no" for the owner of the tapped propane tank because he "surely . . . must have reasonably expected that someone, such as a gasoline station attendant, might lean against the tank or touch it in some manner." *Id* at 1435.

That expectation of contact is even greater for a vehicle's tire as it is routinely checked for air pressure. So *Muniz-Melcher* binds us on the "reasonable expectation of privacy" question. Richmond did not have a reasonable basis to believe that the tire would not be touched.

But a precedent binds us only as far as it goes. *See Brecht v. Abrahmson*, 507 U.S. 619, 631 (1993) (explaining that an opinion is not binding on a question it "never squarely addressed"). Richmond contends that *Muniz-Melcher* did not decide whether tapping part of a vehicle was a search under a

---

[2] *Katz*'s focus on privacy marked a reversal in allowing electronic eavesdropping to be treated as a search even when it does not involve physical penetration into an individual's property. 389 U.S. at 352–53 (overruling *Goldman v. United* States, 316 U.S. 129 (1942), and *Olmstead v. United States*, 277 U.S. 438 (1928)); *see also* Orin Kerr, *The Curious History of Fourth Amendment Searches*, 2012 SUP. CT. REV. 67, 85 (recognizing that pre-*Katz* cases had "eventually focus[ed] on physical penetration into a protected space as the primary test for a Fourth Amendment search" even if trespass was not the focus).

trespass theory because, as the opinion recognized, at that time a physical intrusion did not on its own constitute a search.

We agree. *Katz* held that "[t]he premise that property interests control the right of the Government to search and seize has been discredited." 389 U.S. at 353 (quoting *Warden v. Hayden*, 387 U.S. 294, 304 (1967)). In the decades that followed, a trespass did not automatically amount to a search. *See United States v. Karo*, 468 U.S. 705, 713 (1984) ("[A]n actual trespass is neither necessary nor sufficient to establish a constitutional violation."); *Oliver v. United States*, 466 U.S. 170, 183–84 (1984) (holding that narcotics agent searching for marijuana in the open fields of a farm was not a search even though it was a trespass). But in 2012, *United States v. Jones* revived the property approach that most, including our court, thought *Katz* had jettisoned.[3] 565 U.S. at 400. In explaining why a search occurred when law enforcement placed a GPS tracking device on the undercarriage of a car, the Court relied on "the common-law trespassory test," which it treated as a separate basis for finding a search alongside the *Katz* "reasonable expectation of privacy" test. 565 U.S. at 409.

Lower courts recognized *Jones* as a sea change. *See, e.g.*, *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (Gorsuch, J.) (explaining that that there is now "reason to wonder" about the vitality of a 1984 Supreme Court decision after "*Jones* held that the *Katz* formula is but one way to determine if a . . . 'search' has taken place"); *United States v. Sweeney*, 821 F.3d 893, 899 (7th Cir. 2016) ("In recent years, the Supreme Court has revived a 'property-based approach' to identify unconstitutional searches."); *United*

---

[3] A prominent Fourth Amendment scholar contends that *Jones* did not so much revive the property-based approach as invent it. Kerr, *supra* note 2, at 68 (reaching "the surprising conclusion that no trespass test was used in the pre-*Katz* era"). That historical account is even more problematic for the government's view that a trespass test has always governed Fourth Amendment law, including when *Muniz-Melcher* was decided.

*States v. Katzin*, 769 F.3d 163, 181 (3d Cir. 2014) (en banc) (explaining that "*Jones* fundamentally altered [the] legal landscape by reviving—after a forty-five year hibernation—the Supreme Court's trespass theory"). So did Fourth Amendment scholars.[4] The leading treatise on searches had to add a new chapter to its section on "Protected Areas and Interests." The title of the addition? "Trespass as an alternate theory." *Compare* Wayne R. LaFave et al., 1 SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.1(e) (5th ed. 2012) (explaining that although *Katz* "seemed to sound the death knell for the pre-*Katz* 'trespass' approach," the "doctrine re-emerged as an alternate theory to the *Katz* expectation-of-privacy test"), *with id.* § 2.1 (4th ed. 2004) (no subsection on trespass). The most colorful description of *Jones*'s revival of the trespass approach was the comment that "[i]t turns out that approach was not dead, just taking a really long nap." John P. Elwood & Eric A. White, *What Were They Thinking: The Supreme Court in Revue, October Term 2011*, 15 GREEN BAG 2D 405, 409 (2012).

*Jones* thus requires us to consider the trespass test that *Muniz-Melchor* did not think was sufficient to establish a search but now is. Even under *Jones*, however, a trespass does not get a defendant all the way to characterizing police conduct as a search. *Jones*, 565 U.S. at 408 n.5. Consistent with the meaning of "search," a trespass "must be conjoined" with "an attempt to find something or obtain information." *Id.*; *see also id.* at 404 (describing the

---

[4] The notion that the trespass test had remained part of the post-*Katz* Fourth Amendment inquiry "came as a surprise to every student and scholar of the Fourth Amendment." Kerr, *supra* note 2, at 68 n.5. The titles of numerous post-*Jones* articles reflect this view that the decision restored a property-based approach that had been dormant since *Katz*. *See, e.g.*, Arnold H. Loewy, United States v. Jones: *Return To Trespass-Good News Or Bad*, 82 MISS. L.J. 879 (2013); Nancy Foster, *Back to the Future:* United States v. Jones *Resuscitates Property Law Concepts in Fourth American Jurisprudence*, 42 U. BALT. L. REV. 445 (2013); Herbert W. Titus & William J. Olson, United States v. Jones, *Reviving the Property Foundation of the Fourth Amendment*, 3 CASE W. RESERVE L.J. TECH. & INTERNET 243 (2012).

government's conduct as "physically occup[ying] private property for the purpose of obtaining information"). This prevents a mere physical touching, such as when an officer leans on the door of a car while questioning its driver, from being a search. Gonzales's tapping of the tire was not that type of incidental conduct. He touched the tire in order to help find out what was inside. That satisfies the second *Jones* requirement.

So whether the touching was a search comes down to whether it was a trespass. *Muniz-Melchor* thought tapping a tank "may have constituted a technical trespass," but did not decide if that was the case. 894 F.2d at 1435. Its "technical" qualifier may have come from the absence of damage to the tank, which modern tort law requires for trespass to chattel. *See Jones,* 565 U.S. at 419 & n.2 (Alito, J., concurring) (quoting W. Keeton et al., PROSSER & KEETON ON LAW OF TORTS § 14, at 87 (5th ed. 1984)). But in concluding that attaching a GPS to the exterior of a vehicle was a trespass, *Jones* relied on its reading of the common law of trespass as it existed in 1791 when the Fourth Amendment was ratified.[5] *Id.* at 404–05 (tying the Fourth Amendment to common law trespass and concluding that a "physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted) (citing *Entick v. Carrington,* 95 Eng. Rep. 807 (C.P. 1765)); *id.* at 419 & n.2 (Alito, J., concurring) (characterizing the common law for trespass to chattels as requiring only a "violation of 'the dignitary interest in the inviolability of chattels" (quoting W. Keeton et al., PROSSER & KEETON ON LAW OF TORTS § 14, at 87 (5th ed. 1984)). In terms of the physical intrusion, we see no difference

---

[5] Professor Kerr also questions whether *Jones* got history right on this point. He observes that installing a device on the exterior of a car "is not an obvious case for trespass," as a "trespass usually implies some sort of invasion into property" beyond just touching it. Kerr, *supra* note 2, at 91.

between the *Jones* device touching the car and an officer touching the tire.[6] Nor, apparently, does the government as it does not dispute that the tire tap was a trespass.  Of course, the GPS device remained attached for a longer period and gathered a lot more information compared to a tire tap, but *Jones* found a trespass because of the physical contact the device made with the car at the moment it was affixed.  *Jones*, 565 U.S. at 404 (focusing on the "installation of a GPS device").  Indeed, Justice Alito's opinion in *Jones* critiques the majority's trespass approach because it "largely disregards what is really important (the *use* of a GPS for the purpose of long-term tracking) and instead attaches great significance to something that most would view as relatively minor (attaching to the bottom of a car a small, light object that does not interfere in any way with the car's operation)."  *Id.* at 424–25 (Alito, J., concurring).  The also "relatively minor" act of tapping tires is thus a trespass. Because that trespass occurred to learn what was inside the tires, it qualifies as a search.

This trespass analysis might seem simplistic.  But proponents of the property-based approach view its bright line as a virtue over the less predictable expectation-of-privacy inquiry.  565 U.S. at 412–13 (noting the line-drawing problems that would arise from applying the *Katz* test to the GPS tracking device); Erica Goldberg, *How* United States v. Jones *Can Restore Our Faith in the Fourth Amendment*, 110 MICH. L. REV. FIRST IMPRESSIONS 62, 68–69 (2011) (suggesting that a property-based test provides a "clearer, cleaner

---

[6] *Jones* recognized this similarity in addressing *Cardwell v. Jones*, 417 U.S. 583 (1974), a case that found no Fourth Amendment violation when law enforcement inspected the tread of a tire and collected paint scrapings from the exterior of a car.  In *Jones,* the government argued that *Cardwell* supported its position that installation of the GPS tracker was not a search.  The Court disagreed on the ground that the plurality opinion in *Cardwell* was "unclear" about whether it ruled that way because there was no search or because the search was a reasonable one supported by probable cause.  *Jones*, 565 U.S. at n.7 (quoting *Cardwell*, 417 U.S. at 591–92).

metric of when the Fourth Amendment is implicated"). It may also seem troubling that the brief touching of a tire reveals far less information than other lawful conduct, like a dog sniff, that is not considered a search. *See Illinois v. Cabelles*, 543 U.S. 405, 409 (2005). That critique, however, views the search question through the invasion-of-privacy mindset. Rightly or wrongly, *Jones* held that a trespassory search implicates the Fourth Amendment even if it does not offend privacy interests. Under that property-based approach, Gonzales's tapping of the tire was a search regardless of how insignificant it might seem.

## III.

Although the limited nature of the intrusion does not affect whether the physical examination of the tire is deemed a search, that is only the preliminary Fourth Amendment question. The ultimate question is whether the government's conduct was reasonable. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). And in that analysis the extent of the intrusion on an individual's Fourth Amendment interests is relevant. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (explaining that the reasonableness of a search depends on balancing the governmental interest in the search against the degree of the intrusion on the individual).[7]

The government first argues that a search of the tire complied with the Fourth Amendment because Gonzales had probable cause to believe drugs were inside. Probable cause to believe a vehicle contains contraband allows a warrantless search because of the car's mobility. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).

---

[7] The district court held that Gonzalez did not search the tire, but we may consider the reasonableness of the search because we may affirm the denial of a suppression ruling on any basis supported by the record. *United States v. El-Mezain*, 664 F.3d 467, 540 (5th Cir. 2011).

No. 17-40299

Did that probable cause exist before Gonzales tapped the tire? The information Gonzales had by that time—the wobbly tires, stripped bolts, Richmond's nervousness, and the new registration on an older vehicle stopped in a trafficking corridor—certainly gave him the reasonable suspicion of drug trafficking needed to justify extending the traffic stop to investigate further. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). But probable cause is a higher rung on the probability ladder than reasonable suspicion. *See Navarette v. California*, 572 U.S. 393, 397 (2014) (explaining that the evidence required for reasonable suspicion "is obviously less than is necessary for probable cause" (citation omitted)). Demonstrating the greater showing required for probable cause, evidence rising to that level would be enough to have supported an arrest of Richmond for drug trafficking or a grand jury indictment charging that crime. *See United States v. Watson*, 423 U.S. 411 (1976) (holding that probable cause supports warrantless arrest of a suspect); U.S. CONST. amend. V. We doubt the information Gonzales had prior to tapping the tire rose to that level.

But if probable cause of drug trafficking did not yet exist, the government argues that the physical inspection of the tire served another interest: "ensuring that vehicles on the road are operated safely and responsibly." Indeed, the wobbly tires, the truck veering outside its lane, and the stripped bolts gave a reasonable officer probable cause to believe that the tire posed a safety risk. TEX. TRANSP. CODE § 547.004(a) (making it a misdemeanor to operate a vehicle that is "unsafe so as to endanger a person"). On that basis, the tapping of the tire was justified. It does not matter that Gonzales also

11

No. 17-40299

wanted to find out if drugs were in the tire. *See Whren v. United States*, 517 U.S. 806, 813 (1996).[8]

Pulling back from the discrete Fourth Amendment doctrines we have examined, finding no constitutional violation makes sense in terms of the overall Fourth Amendment balance. The government's interest in making sure that a loose tire does not pose a safety threat strongly outweighs the intrusiveness of an officer's tapping the tire for a second or two.

\* \* \*

The judgement of the district court is AFFIRMED.

---

[8] Richmond argues that public safety must be an officer's sole motivation when that is the justification for the search, citing the pre-*Whren* cases of *South Dakota v. Opperman*, 428 U.S. 364 (1976), and *Cady v. Dombrowski*, 413 U.S. 433 (1973). Both of those cases involved searches conducted as part of routine police procedures. *Opperman*, 482 U.S. at 369 (postimpoundment inventory search); *Dombrowski*, 413 U.S. at 436 (post-tow search of trunk consistent with department policy to retrieve officer's weapon). Whatever role subjective motivation plays in the context of regulatory searches, *Whren* says that intent does not matter for searches based on individualized suspicion. *See Hunsberger v. Wood*, 570 F.3d 546, 554 (4th Cir. 2009) (making this distinction between *Whren* and *Dombrowski*); *cf. Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (explaining that the "emergency aid" exception to the Fourth Amendment "does not depend on the officer's subjective intent"). Suspicion particular to Richmond—probable cause to believe the loose tires on her pickup posed a safety risk—is the basis for finding the tap of the tire reasonable.