**2021 UT 56**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee*,

*v.*

HOLLY SPEIGHTS,
*Appellant*.

No. 20190492
Heard February 10, 2021
Filed September 16, 2021

On Direct Appeal

Fourth District, Provo
The Honorable M. James Brady
No. 181401849

Attorneys:

Sean Reyes, Att'y Gen., Nathan H. Jack, Asst. Solic. Gen., Salt
Lake City, Chase T. Hansen, Poponatui M. Sitake, Provo,
for appellee

Douglas J. Thompson, Provo, for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1    Upon responding to a 911 call complaining of a person trying to enter a private residence and banging on doors and windows, two officers encountered a Ford Explorer that looked like it might be connected to the disturbance. To determine how long the vehicle had been there, one officer touched the hood to assess the temperature of the engine. For the same reason, the other officer reached into the wheel well on two occasions. At trial, both officers testified that the engine felt hot.

¶2   Appellant Holly Speights argues that under U.S. Supreme Court precedent, the officers' touches of her vehicle constitute searches under the Fourth Amendment. She asserts that the officers lacked probable cause to search her vehicle, and therefore their testimony about her engine's temperature should have been excluded at trial.

¶3   We ultimately do not resolve this question, however, because even assuming the officers' conduct amounted to Fourth Amendment searches, we conclude that the automobile exception applies and, at a minimum, the final touch of the wheel well was supported by probable cause. And as Speights does not dispute the State's argument that the third touch was an independent source of the evidence, the testimony about the engine's temperature was admissible. We affirm.

## BACKGROUND[1]

¶4   In the early hours of one June morning, someone began ringing the doorbell and pounding on the front door of a townhome in American Fork. When neither of the residents—a husband and wife—answered the door, the person began banging on the window to the couple's bedroom and then returned to the front door. The person then proceeded to the back door and the husband asked who was there. The person's inaudible response "sounded like a woman." The wife called 911 and relayed this information, including that she heard the person "check the knobs" to the doors.

¶5   Officer Nelson and Sergeant Stowers arrived separately within "a few minutes" of being dispatched and began investigating. Stowers noticed a Ford Explorer "parked partially on the grass and partially on some cement" near the visitor parking and community mailboxes. The vehicle was very close to the townhome—the couple could see it through their window.[2]

---

[1] On appeal from a jury trial, "'we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly.' We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation omitted).

[2] Though the wife could see the vehicle from her bedroom window, she did not see anyone driving or parking it.

The vehicle was unoccupied, although the driver's side door "was latched but not completely closed" and the interior lights were on. Stowers noticed a bottle of liquor that was partially full on the driver's side floorboard. He did not see keys in the ignition or elsewhere inside the vehicle. Stowers "put [his] hand up underneath the wheel well on the driver's side," "far back enough that [his] hand was right next to and touching the metal of the inside" of the wheel well. He noticed that the engine compartment "was hot."

¶6 Nelson also noticed the odd manner in which the vehicle was parked—"not in a parking stall, partially on the grass, partially over a sidewalk"—and that the car's interior lights were on. He then placed his hand on the hood and found it was "hot to the touch."

¶7 Nelson and Stowers separated and spent approximately fifteen minutes looking for the driver of the Explorer, with no luck. When they reconvened at the vehicle, "[n]othing had changed . . . . It looked like it hadn't been disturbed since [they] had last been there," except that its "interior lights were no longer on." Stowers again felt under the wheel well and noted "it was still warm." Nelson observed what appeared to be "smears" from "hand mark[s]" and "clothing" on the car, which indicated to him that "somebody was possibly stumbling" and had used the vehicle to stay steady.

¶8 The townhome residents noticed that the door to their garage was open, which was unusual. They gave the officers permission to search the garage, and Stowers and Nelson entered. Inside, they discovered a woman "lying on a child's inflatable . . . bouncy house." They eventually identified the woman as Holly Speights.

¶9 The officers turned on the garage lights and saw a red camping chair set up next to Speights. On the chair were keys to a Ford lying within arm's reach. The officers did not see any alcohol in the garage. Speights was slurring her words, "having a difficult time putting sentences together," and was unable to stand up straight. She would not comply with commands to show her hands and refused to identify herself. She kept telling the officers to "get out of her home." As Nelson searched Speights, he smelled alcohol and urine. The officers determined it was unsafe to conduct field sobriety tests because Speights could not stand upright on her own.

¶10   The Ford Explorer was unregistered, but when contacted the prior owner said he had recently sold it. Speights confirmed it was hers and that she had bought it "a few months" prior. However, she denied driving or being inside her vehicle and told the officers she had "been home all day," "in [her] bed in [her] garage," and "in the garage smoking a cigarette." The officers did not interview anyone at Speights's house to determine whether she indeed had been home all day or whether anyone else had access to the vehicle.

¶11   The officers detained Speights and impounded her vehicle. Nelson took her to the police station for suspected driving under the influence. Because Speights did not provide a sufficient sample for the "intoxilyzer" test, Nelson sought and received a search warrant to obtain blood and urine samples. Speights's blood sample later revealed a blood alcohol content of 0.17.

¶12   The State charged Speights with, among other things, driving under the influence. And the case eventually proceeded to a jury trial.

¶13   The night before trial, Speights filed a motion to suppress evidence that her Explorer's hood had been hot on the night in question. She argued that Nelson's touch of the hood was an unconstitutional search.[3] Speights relied upon *United States v. Jones*, in which the U.S. Supreme Court held that the government had conducted an unconstitutional search when it attached a GPS device to the underbody of a suspect's vehicle without a warrant.[4] *See* 565 U.S. 400, 404 (2012). Referencing *Jones*, Speights argued that the touch to the hood of her vehicle was a trespass on her property for the purpose of obtaining information, making it a

---

[3] Because the motion was filed after the seven-day requirement under rule 12(c) of the Utah Rules of Criminal Procedure, Speights argued there was good cause for the late filing. *See* UTAH R. CRIM. P. 12(c)(1)(B) (providing that motions to suppress evidence "shall be raised at least 7 days prior to the trial").

[4] In *United States v. Jones*, the Supreme Court relied on common law trespass principles, determining that attaching a GPS device to the underbody of a car for twenty-eight days was a search because the government trespassed upon private property for the purpose of obtaining information. 565 U.S. 400, 404. (2012).

search under the Fourth Amendment. She asserted that the officers did not have probable cause for this warrantless search, so it was unconstitutional and the evidence of her vehicle's temperature should be suppressed.

¶14 The State opposed the motion. It first argued that the motion was untimely, *see supra* ¶ 13 n.3, but asked the trial court to rule on the merits nonetheless. As to the merits, the State relied on *Katz v. United States* and its progeny, which established a standard that a search under the Fourth Amendment occurs when the government intrudes on a person's "reasonable expectation of privacy." 389 U.S. 347, 360 (1967) (Harlan, J., concurring). Among other things, the State argued that Speights had no reasonable expectation of privacy because the vehicle was suspiciously parked in a shared community area.

¶15 The trial court denied the motion as untimely under rule 12(c) of the Utah Rules of Criminal Procedure. However, the court proceeded to the merits and concluded *Jones* was inapplicable to this set of facts based on "the nature of the touching, the nature of the information that was being gathered and the purposes for it."

¶16 The jury heard the evidence as presented above. After Stowers and Nelson testified, Speights renewed her motion to suppress. She asserted that the officers' contacts with her car were "much more intrusive . . . and different" than she understood when she initially filed her motion to suppress.[5] She urged the court to apply *Jones* and find the officers' contacts with her vehicle to be unconstitutional searches. The State again argued that because of the vehicle's location and how it was parked, Speights had no expectation of privacy.

¶17 The trial court took the matter under advisement and denied the motion the following day, explaining that even if there had been a search, "it was reasonable" and thus not in violation of the Fourth Amendment. Speights did not put on a defense and the parties rested. The jury convicted Speights of driving under the influence.

¶18 Speights then moved for a new trial, arguing "her right to be free from unreasonable search and seizure" was violated and

---

[5] In her initial motion to suppress, Speights had challenged only Nelson's contact with the hood of her car. *See supra* ¶ 13.

the evidence of her vehicle's temperature "had a substantial adverse effect on her rights."[6] She again argued that under *Jones*, the officers' contacts with her vehicle were warrantless searches that violated the Fourth Amendment.

¶19 After oral argument, the trial court denied the motion. But this time, the court found that when the officers touched Speights's vehicle, they had committed a trespass under the common law. The court also said there had been no "probable cause before [the officers] touched the vehicle" but determined such a finding was unnecessary "because the action they took . . . was not unreasonable in terms of a Fourth Amendment [s]earch." In other words, because the court determined the trespass was "reasonable," it did not offend the Fourth Amendment.

¶20 Speights timely appealed, contending the trial court erred when it denied her motions to suppress the evidence obtained when the officers touched her vehicle and when it denied her related motion for a new trial. The court of appeals certified the case to us.

¶21 We exercise jurisdiction under Utah Code section 78A-3-102(3)(b).

## STANDARDS OF REVIEW

¶22 "We review the district court's Fourth Amendment ruling de novo." *State v. Anderson*, 2015 UT 90, ¶ 7, 362 P.3d 1232. And the court's denial of a motion for a new trial is reviewed for a "clear abuse of discretion," with its factual findings reviewed for clear error and its application of legal standards reviewed for correctness. *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citations omitted).

## ANALYSIS

¶23 Speights argues that the trial court erred when it denied her motions to suppress and her motion for a new trial. Each motion depended on her argument that the officers' momentary

---

[6] "The court may, upon motion of a party or upon its own initiative, grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." UTAH R. CRIM. P. 24(a).

touches to the exterior[7] of her vehicle to determine whether it had recently been driven were unconstitutional searches under *United States v. Jones*, 565 U.S. 400 (2012). We discuss this U.S. Supreme Court decision and its interaction with the reasonable-expectation-of-privacy analysis established in *Katz v. United States*, 389 U.S. 347 (1967), and its progeny. But we ultimately conclude that we need not determine whether the officers' contacts with Speights's vehicle constitute searches under *Jones*, because even assuming they do, the automobile exception applies and there was probable cause for—at the very least—the final touch of the vehicle. And Speights does not dispute that the final touch of the wheel well was an independent source of the evidence that her engine was hot.

## I. *UNITED STATES V. JONES*

¶24  In *United States v. Jones*, the U.S. Supreme Court held that the government conducted an unconstitutional search when officers attached a GPS device to the underbody of the defendant's vehicle without a warrant. 565 U.S. 400, 404 (2012). The device was used to monitor the vehicle's movements over the course of twenty-eight days. *Id.* at 403.

¶25 The Court first addressed the text of the Fourth Amendment, which "provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Id.* at 404 (alteration in original) (quoting U.S. CONST. amend. IV). The Court stated that a vehicle is indisputably an "effect" as contemplated by the Fourth Amendment, so it is constitutionally protected against unreasonable searches and seizures. *Id.* It then explained that its early "Fourth Amendment jurisprudence was tied to common-law trespass" and that the

---

[7] Speights does not distinguish between the touch to the hood and the touches to the wheel well of her vehicle—in her eyes, they are equally trespassory. Because Speights does not assign any constitutional significance to the distinction between the touches to the wheel well and the hood, we refer to them collectively as contact with the "exterior" of the vehicle. In this context, we use "exterior" to delineate anything that can be reached without opening the closed compartments of a vehicle (such as the hood, doors, or trunk).

"physical intrusion" of attaching a GPS device to a vehicle undoubtedly "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404–05.

¶26 The Court then explained that a trespass to property combined with an attempt to obtain information is a search under the Fourth Amendment. *Id.* at 408 n.5. So the Court held that the government's attachment of the GPS unit to the defendant's car was a search under the Fourth Amendment because the "[g]overnment physically occupied private property for the purpose of obtaining information." *Id.* at 404.

¶27 In the opinion, the Court stated that *Katz v. United States*, 389 U.S. 347 (1967), which focused the Fourth Amendment analysis on whether there had been an infringement on an individual's reasonable expectation of privacy, was a "deviat[ion]" from its early property-based approach. *Jones*, 565 U.S. at 405–07. But it clarified that "*Katz* did not repudiate" the property-based inquiry; instead, *Katz* augmented the analysis. *Id.* at 406–07. The Court explained that both the *Katz* focus on a person's reasonable expectation of privacy and the property-based trespass test coexist. *Id.* at 409 ("[T]he *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test.").

¶28 Looking to the circumstances here, there are three alleged searches at issue: Stowers's touch of the wheel well when he first encountered the vehicle, Nelson's touch of the hood shortly thereafter, and Stowers's second touch of the wheel well after the officers searched the surrounding area and noticed the vehicle's interior lights had turned off. Speights does not differentiate between the various instances of contact with the Explorer. And she argues that both types of touches—to the hood and to the wheel well—are equally invasive and trespassory under *Jones*. So we do not address whether the difference between a touch to the hood and a touch inside a vehicle's wheel well carries constitutional significance. We note that both touches are to the exterior of the vehicle, in the sense that the officers did not open any closed compartment such as the hood, doors, or trunk. *See supra* ¶ 23 n.7.

¶29 Under *Jones*, an officer's touch of the exterior of a vehicle would be considered a search if it amounted to a trespass for the purpose of obtaining information. *Jones*, 565 U.S. at 408 n.5 ("A trespass on 'houses' or 'effects,' or a *Katz* invasion of privacy, is

not alone a search unless it is done to obtain information; and the obtaining of information is not alone a search unless it is achieved by such a trespass or invasion of privacy."). It is undisputed that the officers here touched the vehicle to obtain information—specifically, to assess whether the engine was warm and thus whether the Explorer had been driven recently. So the remaining question is whether each touch was a trespass.[8]

¶30 The reach of *Jones*'s holding on this point remains unsettled. In support of its conclusion that the attachment of a GPS device to a vehicle would have been considered a common law trespass at the time the Fourth Amendment was adopted, the Supreme Court did not elaborate upon the trespass standard it was applying. *Id.* at 404–05. The Court stated only that *Jones*'s holding was a return to Fourth Amendment jurisprudence that was based on common law trespass principles from the founding era. *Id.* at 405. But at least one scholar has argued that this does not clarify the standard because, at the time the Fourth Amendment was ratified, there was no uniform understanding of trespass in the United States. *See* Laurent Sacharoff, *Constitutional Trespass*, 81 TENN. L. REV. 877, 910 (2014) (claiming that although *Jones* "suggested courts should draw upon some common law of trespass circa 1791 when the Fourth Amendment was ratified," by that time, "each state had developed its own property and

---

[8] In denying Speights's initial and renewed motions to suppress, the trial court did not address whether the officers' actions constituted a trespass for two reasons. First, it found the nature and purpose of the touches and the information gathered to be distinct from the conduct in *Jones*. Second, it concluded that, even if the officers had conducted a search, the search did not violate the Fourth Amendment because there was "reasonable suspicion"—as opposed to probable cause—under the circumstances.

But upon Speights's motion for a new trial, the court found that the officers *did* commit a trespass because they had "touch[ed] an object under common law." The court then excused the purported trespass after it had balanced "the nature of the trespass," the "expectation of privacy," and "the impact of the trespass," ultimately concluding again that the trespass was "reasonable," and not in violation of the Fourth Amendment.

trespass law . . . [which] differed from state to state and from the common law of England").

¶31 And a review of how *Jones* has been applied by lower federal courts reveals some inconsistency. Some courts have extended *Jones* to include brief touches to a vehicle's exterior. *See United States v. Richmond*, 915 F.3d 352, 359 (5th Cir. 2019) (determining an officer's tap of a vehicle's wobbly tire to be a search under *Jones*); *Taylor v. City of Saginaw*, 922 F.3d 328, 333 (6th Cir. 2019) (concluding that a parking enforcement officer chalking tires to determine how long cars had been parked was a search under *Jones*).[9]

¶32 But at least one federal district court has refused to extend *Jones* to a situation similar to the one presented here. In *United States v. Owens*, a federal district court found that an officer's "momentary contact with the exterior of the hood of the Defendant's vehicle" did not offend the Fourth Amendment under *Jones*. 2015 WL 6445320, at *9 (D. Me. Oct. 23, 2015), *aff'd on other grounds*, 917 F.3d 26 (1st Cir. 2019). The court determined it was "a stretch to describe this type of momentary contact with the outside of an inanimate object as an 'intrusion' upon the Defendant's effect." *Id.*

---

[9] We note that in neither case did the court's finding of a search under *Jones* lead to the conclusion that the defendant's Fourth Amendment rights were violated. In *United States v. Richmond*, the Fifth Circuit determined that the car's wobbly tire, the defendant's erratic driving, and the tire's stripped bolts gave the officer probable cause to believe the tire posed a public safety risk, so the drugs recovered after the officer tapped the tire were admitted into evidence. 915 F.3d 352, 359–60 (5th Cir. 2019). And in *Taylor*, the court said it was not holding that "chalking [tires] violates the Fourth Amendment." *Taylor v. City of Saginaw*, 922 F.3d 328, 336 (6th Cir. 2019). Rather, the court explained it was holding only that at that stage in the litigation—on appeal from a motion to dismiss—neither the community caretaking exception nor the automobile exception applied to excuse the warrantless search. *Id.* And upon remand, the district court found the search constitutional under the administrative search exception. *Taylor v. City of Saginaw*, 2020 WL 3064448, at *7–8 (E.D. Mich. June 9, 2020).

¶33 These cases suggest that the scope of *Jones* remains unresolved. Ultimately, however, we need not decide whether a police officer touching a car's hood or inner wheel well has committed a trespass as contemplated in *Jones*—and therefore conducted a search if the touch was made to obtain information. This is because, even assuming each of the officers' touches to Speights's vehicle were searches for Fourth Amendment purposes, the automobile exception applies here and there was clearly probable cause for at least Officer Stowers's final touch of the wheel well.

## II. THE AUTOMOBILE EXCEPTION

¶34 As discussed above, when ruling upon the motion for a new trial, the trial court concluded that the officers had committed a trespass under the common law.[10] Although the officers did not have a warrant, the court did not analyze whether an exception to the warrant requirement applied. The court did state that there had been no "probable cause before [the officers] touched the vehicle." But in doing so, the court did not distinguish between the three touches of the vehicle or analyze the totality of the circumstances with regard to each one. It then went on to conclude that a finding of probable cause was unnecessary "because the action they took . . . was not unreasonable in terms of a Fourth Amendment [s]earch." In other words, the court determined the trespass was "reasonable" and therefore did not offend the Fourth Amendment.

¶35 The trial court's legal analysis was incorrect, but we agree with the result of its ruling. While the court was correct that the "ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citation omitted), warrantless searches are "presumptively unreasonable," *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). So assuming the touches of Speights's vehicle were searches, the court should have determined whether

---

[10] When ruling on the motions to suppress, the court declined to determine whether there was probable cause to touch the vehicle because it concluded *Jones* did not apply. However, because in its ruling on the new trial motion the court concluded there was a trespass and also addressed probable cause, we focus on that ruling. *See supra* ¶ 29 n.8.

there was an applicable exception to the warrant requirement. *See State v. Christensen*, 676 P.2d 408, 412 (Utah 1984) (explaining that in the face of a warrantless search, the district court must determine whether there was "evidence showing an exception to the warrant requirement" when ruling on a motion to suppress evidence of that search).

¶36 We conclude that the automobile exception applies here. *See Carroll v. United States*, 267 U.S. 132, 153 (1925) (excusing warrantless searches of automobiles "where it is not practicable to secure a warrant, because the vehicle can be quickly moved"). The automobile exception permits a warrantless search of a vehicle when law enforcement officers have probable cause to believe the vehicle contains "evidence of a crime." *Christensen*, 676 P.2d at 411. "Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *State v. Worwood*, 2007 UT 47, ¶ 34, 164 P.3d 397 (citation omitted). The determination of probable cause is a fact dependent inquiry that depends on the totality of circumstances. *See State v. Poole*, 871 P.2d 531, 534 (Utah 1994); *see also State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986).

¶37 Even assuming there was no probable cause for the first touch of the wheel well and the hood of the vehicle, an examination of the totality of the circumstances surrounding Stowers's second touch inside the wheel well establishes that it was supported by probable cause. The officers had responded to a 911 call complaining of a person acting erratically, including banging on doors and windows and turning knobs to the doors of a private residence. When the officers arrived at the complainants' townhome, they encountered a vehicle close by that was parked recklessly—partially on the grass and partially on the sidewalk. Both officers observed that the interior dome light was on and the driver's side door was latched but not fully closed. They also saw a partially full bottle of liquor on the floor. And when the officers returned from searching the area, the vehicle was undisturbed, except that the interior light had turned off. This signified to the officers that the vehicle had been occupied recently—perhaps around the time of the complained-of behavior. At that point,

Stowers reached into the wheel well for the final time and observed that the vehicle was radiating heat.[11]

¶38 Speights contends the circumstances before Stowers's final touch do not establish probable cause to believe the vehicle had been operated by an intoxicated person. But the standard is not whether the police have probable cause to believe the vehicle contains evidence of the crime with which the defendant is ultimately charged—in this case, driving under the influence. The correct standard is whether there is probable cause to believe the vehicle contains evidence of *a* crime. *See, e.g.*, *United States v. Richmond*, 915 F.3d 352, 359–60 (5th Cir. 2019) (determining that probable cause to believe a wobbly tire posed a safety risk supported an officer's tap of the tire, which led to the discovery of narcotics).

¶39 When Stowers touched inside the wheel well the second time, he had probable cause to believe that the Explorer was related to the 911 call reporting a disturbance of the peace—given that the vehicle was recklessly parked close by the complainants' house, it contained an open bottle of liquor on the driver's floorboard, the driver's door was latched but not fully closed, and it appeared to have been recently "parked" because the interior light automatically turned off while the officers were there. Under these circumstances, Stowers had probable cause to believe that the Explorer would contain evidence of the identity of the person who was disturbing the peace.

¶40 The State argues in its appellee brief that the third touch was an independent source of the evidence that the Explorer's engine was warm, making this evidence admissible. Speights does not respond to this argument in her reply brief.

¶41 Exclusion is not necessary when evidence was obtained "'through independent and lawful activity'—in other words, through an independent source." *Worwood*, 2007 UT 47, ¶ 43 (citation omitted). Thus, evidence is admissible "if there is, in essence, an untainted version of the evidence." *State v. Topanotes*,

---

[11] Because the trial court did not make detailed factual findings as to the chronology of the events, we pieced together this chronology based on the parties' briefing and the trial transcript. At oral argument, Speights's counsel did not dispute this chronology.

2003 UT 30, ¶ 13, 76 P.3d 1159. And Speights has not responded to the State's argument that the final touch inside the wheel well was an independent source of this evidence.

¶42 Accordingly, we conclude that evidence of the engine's temperature was admissible because the automobile exception applies, the final touch of the wheel well was supported by probable cause, and Speights has not disputed that it was an independent source of this evidence.

## CONCLUSION

¶43 The Supreme Court has clarified that both the *Katz* reasonable-expectation-of-privacy analysis and the *Jones* trespass analysis are relevant to the question of whether a search has occurred under the Fourth Amendment. However, we do not decide here whether a momentary touch to the exterior of a vehicle to obtain information constitutes a search under *United States v. Jones*, 565 U.S. 400 (2012). This is because, even if the officers' contacts with the vehicle here were searches, the automobile exception applies, and the final touch of the vehicle was supported by probable cause and provides an independent source of the evidence.

¶44 We affirm.

———————————