**2024 UT App 118**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TROY P. FRAUGHTON,
Appellant.

Opinion
No. 20210810-CA
Filed August 15, 2024

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 191402497

Staci Visser and Ann Marie Taliaferro,
Attorneys for Appellant

Sean D. Reyes and Jonathan S. Bauer,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

OLIVER, Judge:

¶1      Troy P. Fraughton was arrested after he caused a collision while driving on the wrong side of the road. A jury convicted Fraughton of driving under the influence, a third-degree felony due to his prior DUIs. Fraughton now appeals, asserting that the trial court abused its discretion in allowing police officers to offer opinion testimony as to whether Fraughton was incapable of safely operating a motor vehicle. Fraughton also moves for a remand under rule 23B of the Utah Rules of Appellate Procedure to develop a record to support an ineffective assistance of counsel claim. For the reasons set forth below, we deny the rule 23B motion and affirm Fraughton's conviction.

BACKGROUND[1]

¶2    On a clear June afternoon in 2019, Fraughton caused a low-speed, head-on collision when he drove down the wrong side of Center Street in Spanish Fork, Utah. The road had two lanes in each direction with a turning lane in the middle. The driver of the other vehicle (Driver) was traveling east in the left lane when he saw Fraughton's car crest the hill, going west in Driver's lane. Traffic prevented Driver from moving to the right, so he drifted into the center turn lane to avoid Fraughton's oncoming car. But as Driver moved, so did Fraughton, and the cars collided.

¶3    Driver got out of his car to see if Fraughton was okay. As he approached Fraughton's vehicle, he overheard Fraughton on his phone saying, "I'm going to jail." Driver was familiar with how people "under the influence of alcohol" look and act, and he thought Fraughton "looked like he was impaired." Fraughton "kind of slurred his words" and suggested to Driver that they both leave the scene. Driver told Fraughton he would not leave until officers arrived. Driver then went back to his vehicle where he told his passenger (Passenger), "I think he's been drinking. He wants to go. You need to call the police."

¶4    The first officer to arrive at the scene (Officer 1) had over twenty years of experience, including "thousands" of situations involving individuals under the influence of alcohol. Officer 1 saw Fraughton's vehicle "touching bumpers" with Driver's, halfway in the left-turn lane and partially blocking one lane of eastbound traffic. As Officer 1 approached Fraughton's vehicle,

---

1. On appeal from a jury trial, "we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly," and "we present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Speights*, 2021 UT 56, n.1, 497 P.3d 340 (cleaned up).

he heard Fraughton on his phone saying, "Mom, come and get me from the jail." Officer 1 smelled the "distinct [odor] of an alcoholic beverage emanating from" Fraughton.

¶5     Officer 1's body camera footage recorded his interaction with Fraughton. Officer 1 asked Fraughton whether he "had a little too much to drink." Fraughton denied drinking anything that day. Officer 1 pointed out that he could smell it on Fraughton, that his eyes were bloodshot, that his face was red and puffy, and that he was struggling to keep his balance and was holding onto the car during the conversation. Then Officer 1 asked Fraughton whether he was "gonna stick with [his] story" that he had not been drinking, and Fraughton replied, "Yep."

¶6     Officer 1 asked dispatch if there were any "new guys that want[ed] to do a DUI for practice," explaining, "it's an easy one." A newer officer (Officer 2) responded and arrived on the scene. He smelled alcohol "coming from inside [Fraughton's] vehicle and off his breath" and noticed Fraughton's speech was "[s]omewhat slurred." According to Officer 2, Fraughton stumbled as he exited his vehicle and then "turned around and placed his hands behind his back and said, 'Let's go.'" Officer 2 understood that as meaning, "[L]et's go to jail." Fraughton was transported to the Spanish Fork police station for field-sobriety tests to be conducted on "a smoother surface" than on the inclined road where the accident occurred.

¶7     At the station, Fraughton became "belligerent" and "very agitated." Refusing to take the tests, he was transported to the Utah County Jail. Officer 2 obtained a warrant for a blood draw, and a forensic nurse (Nurse) drew Fraughton's blood, approximately two hours after the accident. After the blood sample was tested at the state lab, its blood alcohol concentration (BAC) was determined to be .27—over five times the legal limit.

¶8     Fraughton was charged with driving under the influence of alcohol, a third-degree felony due to his prior convictions.[2] The case proceeded to a three-day jury trial. Driver and Passenger testified about the collision and their interactions with Fraughton. Officer 1 also testified about the events recounted above, and his body camera footage was played for the jury. Officer 1 reiterated why he believed Fraughton was intoxicated, describing how Fraughton smelled like alcohol, had bloodshot and watery eyes, a red and puffy face, and displayed an "inability to balance without holding on to something."

¶9     The State concluded its direct examination of Officer 1 by asking if Fraughton was "capable of safely operating a vehicle." Fraughton's counsel (Counsel) objected, and the court allowed the testimony as a lay opinion under rule 701 of the Utah Rules of Evidence. Officer 1 then testified that he "would not have allowed [Fraughton] to get back in that car and drive that car."

¶10     The State then presented testimony from Officer 2 and played his body camera footage for the jury. The State asked Officer 2 about his opinion on whether Fraughton was "capable of safely operating a vehicle" based on his "interactions with him on that day" and on his "observations of him" and his "experience dealing with DUIs." Counsel objected, asserting that the question asked for "a legal conclusion." The State responded that, similar to Officer 1's opinion, Officer 2's opinion "comes under Rule 701." The court agreed and allowed the question of whether Fraughton "was able to safely operate a vehicle," to which Officer 2 responded, "No, he was not." When asked why not, Officer 2 explained that it "was obvious [Fraughton] was under the influence of alcohol or some sort of substance" and "was involved

---

2. Fraughton was also charged with and convicted of the infraction of failure to stay in one lane during this incident, but that conviction is not at issue in this appeal.

in an accident," so it "did not appear as if he was able to safely operate a vehicle."

¶11    Nurse testified that, at the time of trial, she had over fourteen years of experience in drawing blood and taking urine samples for suspected DUIs and had performed "a few thousand" blood draws for DUI cases. Nurse described how she took the two vials of Fraughton's blood, placed them in the middle of a seal, and secured the seal so it was "completely sealed over the sample." This method, she explained, is designed so "if there's any contamination at all, . . . it would rip the seal."

¶12    Nurse continued to elaborate on the blood sample's chain of custody, stating that she placed the sealed vials inside an envelope she then sealed before placing it inside a biohazard bag, which she also sealed. The triple-sealed sample was then placed in Nurse's secured lockbox, the key to which she kept on her key ring, and then kept in a mini-fridge at her home until her supervisor picked it up. Nurse drew Fraughton's blood at 4:53 p.m. on June 15, and her supervisor picked up the sample at 2:25 p.m. on June 17. The following day, her supervisor signed the sample over to the post office at 2:20 p.m., where it was mailed to the state lab.

¶13    The lab toxicologist who analyzed Fraughton's sample (Toxicologist) testified that Fraughton's BAC was .27 and estimated a 200-pound man would have to drink approximately twelve standard drinks of alcohol to reach that BAC level. She explained how the lab typically processes samples: the samples routinely arrive by mail, and two employees at the lab process them by checking the information on the samples against the "toxicology analysis request form" and then entering that information into the lab's computer system. Toxicologist explained that anything abnormal about the sample would be entered at that time. The form for Fraughton's sample was

properly processed and did not indicate there was anything abnormal about the sample.

¶14 The jury convicted Fraughton of DUI. Using a special verdict form, the jury found Fraughton guilty on two separate grounds. First, they found that Fraughton "had sufficient alcohol in his body that a subsequent chemical test showed that he had a blood alcohol concentration of .05 grams or greater at the time of the test." Second, they found that Fraughton "was under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle."

¶15 The trial court sentenced Fraughton to a suspended prison sentence "not to exceed five years" and placed him on probation for thirty-six months. Fraughton was also given a 210-day jail sentence and ordered to have an ignition interlock device installed when he was released.

ISSUES AND STANDARDS OF REVIEW

¶16 Fraughton requests that we remand his case under rule 23B of the Utah Rules of Appellate Procedure for entry of findings of fact to support an argument that Counsel rendered ineffective assistance in (1) failing to investigate the chain of custody of the blood sample, (2) failing to file a motion challenging the admissibility of the blood sample based on potential issues with the chain of custody, and (3) failing to consult and use an expert regarding the blood evidence. A rule 23B remand is "available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." Utah R. App. P. 23B(a).

¶17 Fraughton also contends that the trial court abused its discretion in allowing Officer 1 and Officer 2 to offer opinions as to whether Fraughton was incapable of safely operating a motor

vehicle. "We review the [trial] court's decision regarding the admissibility of testimony for an abuse of discretion." *Erickson v. Erickson*, 2018 UT App 184, ¶ 8, 437 P.3d 370. "If we determine the testimony was erroneously admitted, the defendant must show that the error was prejudicial." *State v. Harvey*, 2019 UT App 108, ¶ 12, 446 P.3d 125 (cleaned up).

ANALYSIS

I. Rule 23B Remand

¶18 We first address Fraughton's request for a rule 23B remand to present evidence that would have supported a motion to exclude the BAC evidence at trial. *See* Utah R. App. P. 23B. Fraughton contends that this evidence will support his argument that Counsel was ineffective for not investigating the blood sample's chain of custody, not filing a motion to challenge the admissibility of the blood evidence, and not consulting with or calling experts to testify regarding that evidence.

¶19 As noted above, a rule 23B remand is "available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.* R. 23B(a). We will grant an appellant's rule 23B motion only if the following requirements are met: "(1) the motion must be supported by affidavits alleging facts outside the existing record, (2) the alleged facts must be non-speculative, and (3) the alleged facts, if true, must establish both elements of a traditional ineffective-assistance claim, i.e., counsel's deficient performance and resulting prejudice." *State v. Miller*, 2023 UT App 85, ¶ 52, 535 P.3d 390 (cleaned up), *cert. denied*, 540 P.3d 78 (Utah 2023). Fraughton has not satisfied the first two requirements.

¶20 Fraughton's rule 23B motion relies on opinions from two experts on how the chain of custody was handled for Fraughton's

blood sample.[3] After reviewing this case's materials, the experts expressed "concerns" about the blood sample's security "that shed doubt on its probative value as an indicator of Mr. Fraughton's BAC." Specifically, the experts believed Nurse's use of her mini-fridge at home was improper because there was no evidence at trial that Nurse's home "qualifies as [a] secure facility" or that her mini-fridge "is temperature monitored." Additionally, the experts were concerned about where the blood sample was kept during the twenty-four hours when it was in the supervisor's possession before he mailed it. And finally, the experts argued the state lab did not follow standard practice when it failed to document the condition of the seals or the sample upon receipt.

¶21    Taken as a whole, this evidence does not amount to the "nonspeculative allegation of facts" not already in the record required for a rule 23B motion. *See* Utah R. App. P. 23B(a). The experts' opinions, set forth in a three-page summary letter, express "concerns" about potential problems regarding the refrigeration and the physical security of the blood sample, but they do not provide any facts to support that Fraughton's blood sample was actually handled improperly. Fraughton needed to provide affidavit testimony from someone with knowledge about an actual problem related to the blood sample's refrigeration or security—such as Nurse or her supervisor—or documentation that showed tampering or mishandling of the sample. The experts' "concerns" alone do not satisfy the requirements of rule 23B.

---

3. Fraughton also included in his rule 23B motion (1) an affidavit from appellate counsel confirming that Counsel did not consult with an expert or speak to Nurse prior to trial, (2) the documentation of Fraughton's blood testing, and (3) forensic standards for test samples.

¶22    "The purpose of a remand is not to allow for a fishing expedition to discover new, non-record facts but to provide the opportunity to supplement the record with *facts already discovered* that could support a claim of ineffective assistance of counsel." *State v. Crespo*, 2017 UT App 219, ¶ 49, 409 P.3d 99 (emphasis added) (cleaned up); *State v. Griffin*, 2015 UT 18, ¶ 19, 441 P.3d 1166 (stating that the "mere hope that an individual may be able to provide information if subpoenaed to testify is not sufficient" and that an "affiant must submit specific facts and details that relate to specific relevant occurrences" in support of a rule 23B motion). Here, there are no already discovered facts showing an actual problem related to the blood sample's refrigeration or security. Accordingly, we deny Fraughton's rule 23B motion.

## II. Opinion Testimony

¶23    Having denied Fraughton's rule 23B motion, we can easily dispatch with his argument that the trial court erred in allowing testimony from Officer 1 and Officer 2 about whether Fraughton was incapable of safely operating a motor vehicle. To prevail on appeal, Fraughton must show both that the evidentiary ruling was erroneous and that it resulted in prejudice. *State v. Harvey*, 2019 UT App 108, ¶ 12, 446 P.3d 125. But even if we assume that the officers' testimony should have been excluded, Fraughton cannot show prejudice here because the jury found him guilty of driving under the influence on the alternative ground that his BAC was greater than .05.

¶24    The jury in this case was asked to complete a special verdict form with respect to driving under the influence of alcohol. That form provided two alternative grounds upon which the jury could find Fraughton guilty: (1) he "had sufficient alcohol in his body that a subsequent chemical test showed that he had a blood or breath alcohol concentration of .05 grams or greater at the time of the test" or (2) he "was under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle."

The jury found him guilty on both grounds. Exclusion of the officers' testimony would only have affected the second ground on which the jury reached its verdict, and would not have affected the first ground—that his BAC was over .05 grams at the time of the test. Thus, Fraughton cannot demonstrate that admission of the officers' testimony resulted in prejudice.

CONCLUSION

¶25 We deny the motion to remand under rule 23B because Fraughton has not alleged nonspeculative and already-known facts that, if true, would establish his ineffective assistance of counsel claim. And we determine that Fraughton was not prejudiced by admission of the challenged testimony. Accordingly, we affirm.

———————