**2024 UT App 180**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRADLY SCOTT HUNT,
Appellant.

Opinion
No. 20221023-CA
Filed December 12, 2024

Fifth District Court, St. George Department
The Honorable Keith C. Barnes
No. 201500943

Michael Winn and K. Andrew Fitzgerald,
Attorneys for Appellant

Sean D. Reyes and William M. Hains,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

ORME, Judge:

¶1 Bradly Scott Hunt was convicted of murder and possession of a dangerous weapon by a restricted person for fatally shooting his former neighbor (Neighbor). On appeal, he argues his trial counsel (Counsel) provided ineffective assistance in eliciting testimony from him on direct examination about his prior convictions. He also argues he was entitled to a mistrial after the State asked him about his intent to kill Neighbor, and he argues this questioning constituted prosecutorial misconduct. We disagree on all fronts and affirm Hunt's convictions.

BACKGROUND[1]

¶2      Hunt and Neighbor used to spend lots of time together fixing cars and hanging out at Hunt's house. But after learning that Neighbor's wife, whom Neighbor could observe from Hunt's property, had obtained a protective order against Neighbor, Hunt asked Neighbor to stay away from his house.

¶3      One night, Hunt had just returned home from work when he heard the gate on the side of his house rattling and saw Neighbor trying to enter the backyard. Although visitors usually entered through that side gate, Hunt "saw red" because he felt that Neighbor was violating his boundaries. Hunt ran out the front door, yelling that Neighbor was not supposed to be on his property and warning that if he had his gun, he would kill Neighbor. Hunt then hit Neighbor in the head, knocking him unconscious. After Neighbor fell to the ground, Hunt struck him a few more times and then dragged him by the legs down the driveway and into the middle of the road, where he broke a glass bottle next to Neighbor's head. Police responded after being called by witnesses and, notwithstanding the protective order, Neighbor's wife helped him away. Neighbor opted not to press charges against Hunt because of their "friendship."

¶4      Later that night, after things had calmed down, Hunt, his father, and two friends were in Hunt's backyard. Wary that Neighbor would return with a gun, Hunt and his father had turned off all the interior and exterior lights and padlocked the side gate. Hunt's father had also leaned a shotgun near the front

---

1. "We review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly, and we present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Fraughton*, 2024 UT App 118, n.1, 556 P.3d 118 (quotation simplified).

door. Hunt's dogs began barking inside the house, and Hunt got up and ran inside. He later testified that he saw a "silhouette of a man" outside the front windows. He immediately grabbed the shotgun, ran outside, and fired, shooting Neighbor, who was on the other side of the gate.

¶5 Neighbor lay on the driveway with a wound to his torso until emergency personnel arrived. He later died at the hospital. Meanwhile, Hunt was transported to the police station, where he admitted in an interview to shooting Neighbor and claimed he had acted in self-defense. He was later charged with murder and possession of a dangerous weapon by a restricted person.[2]

¶6 Before trial, Hunt filed a motion in limine seeking to exclude evidence of his prior felony convictions under rule 404(b) of the Utah Rules of Evidence. But at a hearing on the motion, the parties indicated that they had reached an agreement regarding evidence of Hunt's convictions. The parties stipulated to Hunt's status as a convicted felon for purposes of the charge for possession of a dangerous weapon by a restricted person and they acknowledged that if Hunt were to testify at trial, the State could cross-examine him using his prior convictions under rule 609 of the Utah Rules of Evidence.

¶7 At trial, the State called several witnesses, some of whom testified about Hunt's prior convictions. An officer, who responded to the earlier physical altercation between Hunt and Neighbor, testified that he was familiar with Hunt and had told him, "[H]ey, look, you don't want to go back to prison since you've been there for ten years." While testifying about the events

---

2. Hunt was also charged with possession or use of a controlled substance and possession of drug paraphernalia based on materials recovered during the search of his home after the shooting, but he was acquitted of these charges at trial.

surrounding the shooting, Hunt's father also verified that Hunt was a convicted felon.

¶8 After the State rested, Counsel[3] informed the court that the defense would be calling a sheriff's deputy who had "a rapport with" Hunt "from the jail." The deputy testified that he had worked as a corrections officer during Hunt's prior periods of incarceration and that Hunt had been a respectful and cooperative inmate. The deputy also happened to respond to the aftermath of the shooting and testified that Hunt had posed "no problems" as he was transported to the police station for questioning.

¶9 Hunt also testified. He stated that after his dogs began barking, he went inside and saw the "silhouette" of a man "trying to manipulate" the front windows of his house. He claimed he was "terrified" thinking it was Neighbor "breaking into" his home to kill him. Counsel also asked Hunt, "[Y]ou've been to prison, right?" Hunt answered, "I have," and he explained he had prior convictions for drug-related charges, retail theft, and forgery. Hunt indicated he had taken plea deals in these prior cases and "accepted responsibility," the implication being that he would have done the same in this case if he were guilty.

¶10 During Hunt's cross-examination, the State elicited the following exchange:

> [The State]: And just to be clear, [Neighbor] wasn't killed accidentally, correct?
>
> [Hunt]: Correct.

---

3. The defense team included two attorneys. Because Hunt raises his ineffective assistance claim against only one of them, we focus on her actions alone.

[The State]: You intentionally pointed the shotgun at [Neighbor] and you pulled the trigger intending to kill or seriously wound [Neighbor]; is that true?

[Hunt]: Correct.

Counsel then objected, stating, "Intentionally is a legal term" that "calls for a legal conclusion my client can't make" and that it was "defined in the jury instructions as a legal term." After a sidebar, the court sustained the objection. But later, the State again inquired about Hunt's intent:

[The State]: It wasn't until after you made that decision, after you popped the door open with the desire to shoot the gun, that at that point you say you saw something, correct?

[Hunt]: So when you say desire—

[The State]: Well, I say intent, but apparently counsel has issue with that.

[Hunt]: Did I desire to shoot [Neighbor]? No.

[The State]: Did you intend to shoot [Neighbor]?

[Hunt]: Yes.

¶11 Counsel again objected, stating, "Your Honor, this is twice." At a sidebar, Counsel said, "I'm inclined to move for a mistrial." The defense pointed out that the "jury will specifically get mens rea terms that will say intent" and noted that the State had "used that word several times." The court sustained the objection, stating, "We've already gone through this earlier," but it declined to grant a mistrial and suggested a curative instruction instead.

¶12 After the defense rested, the court instructed the jury, including with this curative instruction:

> The terms "intend," "intentional," or "intentionally" are terms of common usage which have plain meanings.
>
> However, there are specific legal implications of these terms which go towards the mens rea or state of mind elements to certain offenses; namely, murder.
>
> The common usage of these terms should not be confused with the legal meanings of these terms.
>
> "Intentionally" is a legal term of art as defined in jury instructions.

The instructions also addressed perfect and imperfect self-defense and defense of habitation, each of which Hunt had argued at trial. The jury found Hunt guilty of murder and possession of a dangerous weapon by a restricted person.

¶13 Hunt appeals.

ISSUES AND STANDARDS OF REVIEW

¶14 On appeal, Hunt argues Counsel provided ineffective assistance when she elicited testimony from him regarding his prior convictions. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Lee*, 2014 UT App 4, ¶ 6, 318 P.3d 1164 (quotation simplified).

¶15 Hunt also argues the district court erred in denying his motion for a mistrial after the State cross-examined him regarding his intent to kill Neighbor. "We review the denial of a motion for

a mistrial under an abuse of discretion standard, and we will not reverse the court's decision unless it is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *State v. Kufrin*, 2024 UT App 86, ¶ 33, 551 P.3d 416 (quotation simplified).

¶16    Relatedly, Hunt argues this cross-examination regarding his intent constituted prosecutorial misconduct. "Prosecutorial misconduct is not a standalone basis for independent judicial review, meaning that we do not review the prosecutor's actions; rather, when a prosecutorial misconduct objection is made below, we review the district court's ruling on the objection for abuse of discretion." *State v. Lyden*, 2020 UT App 66, ¶ 12, 464 P.3d 1155 (quotation simplified). But "when a prosecutorial misconduct objection is not made, . . . the law of preservation controls and we review the issues under established exceptions to the law of preservation." *Id.* (quotation simplified).

ANALYSIS

I. Ineffective Assistance

¶17    Hunt argues Counsel provided ineffective assistance in eliciting testimony from the deputy and Hunt himself about his prior convictions. "To succeed on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense." *State v. Lee*, 2014 UT App 4, ¶ 13, 318 P.3d 1164 (quotation simplified). "To establish that counsel's performance was deficient, a defendant must show that counsel's representation fell below an objective standard of reasonableness," which requires the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation simplified). "To establish the prejudice prong of an

ineffective assistance of counsel claim, the defendant must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *Id.* (quotation simplified).

¶18  Turning to the first prong, we conclude that bringing up Hunt's prior convictions did not constitute deficient performance by Counsel. In *State v. Bedell*, 2014 UT 1, 322 P.3d 697, prior to the trial of a doctor charged with sexual abuse of a patient, the district court prevented the State from admitting evidence of nine other sexual misconduct allegations against him, concluding the evidence was inadmissible under rule 403 of the Utah Rules of Evidence. *Id.* ¶ 6. Despite this, the doctor's defense counsel mentioned during opening statements that the accusing patient had learned that the doctor was "being investigated for allegations of sexual impropriety against [other] patients." *Id.* ¶ 7 (quotation simplified). Defense counsel then repeatedly brought up the other allegations while cross-examining the investigating detective and again during closing argument "to argue that the State had not thoroughly investigated [the patient's] claims 'because there was already an investigation going on'" and to establish "a theme that [the patient] had limited credibility and had only reported her claims after she learned of an ongoing investigation." *Id.* ¶ 21. Our Supreme Court concluded that defense counsel's "affirmative decision from the outset to utilize the . . . evidence to attack the State's case and [the patient's] credibility" and to create a "theme" for the defense was a "legitimate strategic decision" and thus not deficient performance. *Id.* ¶¶ 21, 24–25.

¶19  Similarly, Counsel used Hunt's prior convictions strategically, introducing the evidence to minimize its damage and in an attempt to spin the narrative to Hunt's advantage. During its case-in-chief, the State admitted exhibits by stipulation, including a copy of a judgment in which Hunt pled guilty to a prior felony charge. And testimony from two of the State's

witnesses—a police officer who responded to the earlier physical altercation between Hunt and Neighbor and Hunt's own father—had already alluded to these convictions. The State had also made it clear that should Hunt choose to testify, it would introduce evidence of his convictions to cross-examine him pursuant to rule 609 of the Utah Rules of Evidence. Counsel chose to deal with the prior convictions "up front . . . to build credibility" for Hunt and try to "minimize the prejudicial impact of the convictions"—which is "often a sound strategic decision." *See Lee*, 2014 UT App 4, ¶ 18.

¶20    Using this evidence also allowed Counsel to highlight that in each prior case, Hunt had "accepted responsibility" by pleading guilty. *See State v. Gedi*, 2013 UT App 133, ¶ 11, 302 P.3d 840 (holding that, although "disclosure of a defendant's prior conviction is generally something defense counsel would seek to avoid," defense counsel had not performed deficiently in bringing up a defendant's prior convictions "to make the point that he had willingly taken responsibility for his actions when he was guilty and therefore was telling the truth now"). Counsel further attempted to salvage Hunt's image by eliciting testimony about his cooperative and respectful behavior during his prior incarceration.

¶21    Bringing up the convictions again—despite the earlier motion seeking to exclude them—allowed Counsel "to take the wind out of the sails" of the State before it could cross-examine Hunt. *See Lee*, 2014 UT App 4, ¶ 18 (quotation simplified). Considering the "wide latitude" we give "to trial counsel to make tactical decisions," it was certainly reasonable for Counsel to use the evidence this way. *Bedell*, 2014 UT 1, ¶ 23. Accordingly, Counsel did not perform deficiently, and Hunt's ineffective assistance claim fails.

## II. Motion for Mistrial

¶22 Hunt next argues the district court should have granted his motion for a mistrial. During cross-examination, the State twice asked Hunt about his intent to shoot Neighbor. It first asked, "You intentionally pointed the shotgun at [Neighbor] and you pulled the trigger intending to kill or seriously wound [Neighbor]; is that true?" Counsel objected, arguing that "[i]ntentionally is a legal term" that was "defined in the jury instructions" and the State's question thus called "for a legal conclusion" that Hunt could not make. The court sustained the objection. Later, the State elicited the following exchange, which we repeat:

> [The State]: It wasn't until after you made that decision, after you popped the door open with the desire to shoot the gun, that at that point you say you saw something, correct?
>
> [Hunt]: So when you say the desire—
>
> [The State]: Well, I say intent, but apparently counsel has issue with that.
>
> [Hunt]: Did I desire to shoot [Neighbor]? No.
>
> [The State]: Did you intend to shoot [Neighbor]?
>
> [Hunt]: Yes.

Counsel again objected, saying, "Your Honor, this is twice." The court sustained this objection, indicating that the parties had "already gone through this earlier." Counsel later moved for a mistrial, arguing that the word "intent" and its variations "have a very specific legal definition" that the jury would read in the jury instructions after having already heard the State's cross-examination. The court denied the motion, observing that a

curative instruction would be an adequate remedy. Hunt argues this was an abuse of the court's discretion.

¶23    "A mistrial is strong medicine." *State v. Bermejo*, 2020 UT App 142, ¶ 75, 476 P.3d 148 (quotation simplified). And "in view of the practical necessity of avoiding mistrials and getting litigation finished, the trial court should not grant a mistrial except where the circumstances are such as to reasonably indicate that a fair trial cannot be had and that a mistrial is necessary to avoid injustice." *Id.* (quotation simplified). "Because a district judge is in an advantaged position to determine the impact of courtroom events on the total proceedings, once a district court has exercised its discretion and denied a motion for a mistrial, an appellate court will not reverse the court's decision unless it is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *Id.* (quotation simplified). Ultimately, "[e]valuating a denial of a mistrial motion requires us to consider the totality of evidence against the defendant and the circumstances surrounding the improper statements." *Id.* ¶ 76. Under the circumstances here, we conclude the district court did not abuse its discretion in denying Hunt's motion for a mistrial.

¶24    Hunt relied on self-defense and defense-of-habitation arguments throughout trial. And these arguments assumed the fact that he did intend to shoot Neighbor—albeit justifiably. True, the jury instructions asked the jury to determine beyond a reasonable doubt whether Hunt "intentionally or knowingly caused the death of" Neighbor. And the State cross-examined him regarding his intent. But, in making his self-defense and defense-of-habitation arguments, Hunt had essentially conceded that he had such intent. We cannot say that the State's questioning regarding intent so influenced the jury as to deprive Hunt of a fair

trial. Thus, the district court did not abuse its discretion in denying his motion for a mistrial.[4]

### III. Prosecutorial Misconduct

¶25 Relatedly, Hunt argues the State's cross-examination regarding his intent constituted prosecutorial misconduct. Because "prosecutorial misconduct is not a standalone basis for independent judicial review," "when a defendant raises a claim of prosecutorial misconduct on appeal," our task on review "is not . . . to question the prosecutor's actions." *State v. Reid*, 2018 UT App 146, ¶ 40, 427 P.3d 1261 (quotation simplified), *cert. denied*, 432 P.3d 1225 (Utah 2018). "Instead, appellate courts review the decisions of lower courts, not the actions of the prosecutor—at least not directly." *Id.* (quotation simplified). But for us to do so, the issue must be preserved. *See State v. Davis*, 2013 UT App 228, ¶ 24, 321 P.3d 1136 ("Claims of prosecutorial misconduct are subject to the preservation rule.") (quotation simplified), *abrogated on other grounds by State v. Ringstad*, 2018 UT App 66, 424 P.3d 1052.

¶26 "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it"—meaning the issue has been "specifically raised . . . in a timely manner" and is "supported by

---

4. It is far from clear that the court should have sustained either of Counsel's objections to the questions about Hunt's intent in the first place. As the court itself later noted in its curative instruction, while the word "intentionally" is "a legal term of art as defined in the jury instructions," it also has a "common usage." And "when witnesses have used a term in its ordinary meaning rather than its legal meaning, we have determined that their testimony was appropriately admitted." *State v. Zimpfer*, 2024 UT App 136, ¶ 38 (quotation simplified).

evidence and relevant legal authority." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (quotation simplified). Thus, "when a defendant fails to raise the issue before the district court, the law of preservation controls and we review the issues under established exceptions to the law of preservation, namely, plain error, exceptional circumstances, or ineffective assistance of counsel, if the appellant argues that one of these exceptions apply." *Reid*, 2018 UT App 146, ¶ 40 (quotation simplified).

¶27 The State argues that Hunt has not preserved this issue for appeal. Given that the State's questions regarding Hunt's intent likely were not improper, *see supra* note 4, we are far from certain that any prosecutorial misconduct occurred here. In any event, we agree with the State that Hunt's prosecutorial misconduct argument is unpreserved. Counsel moved for a mistrial, arguing that the words "intend," "intends," "intention," and the like "have a very specific legal definition" and the last thing the jury had heard from Hunt during his testimony were the words "intention and shoot and intention and kill." Counsel argued a curative instruction would not be a sufficient remedy. But Counsel did not invoke prosecutorial misconduct while arguing for a mistrial, nor did the court address it. Accordingly, the issue was not raised with specificity. And because Hunt does not urge us to review the claim under an exception to our preservation rule, "we have no occasion to address the merits of this issue." *State v. Murphy*, 2019 UT App 64, ¶ 14, 441 P.3d 787, *cert. denied*, 466 P.3d 1074 (Utah 2020).

CONCLUSION

¶28 Counsel's attempt to use Hunt's prior convictions to his advantage did not constitute deficient performance and thus, Hunt's ineffective assistance claim fails. Because Hunt's defenses rested on what amounted to a concession of intent, the district court did not abuse its discretion in denying his motion for a

mistrial based on the State's cross-examination regarding intent. And we do not address Hunt's unpreserved claim that this cross-examination constituted prosecutorial misconduct.

¶29     Affirmed.

————